RICHARD MESCON, ESQ.
New York Bar No. 1434968
(*pro hac vice* to be submitted)
SHERLI FURST, ESQ.
New York Bar No. 4783577
(*pro hac vice* to be submitted)
ROBINS KAPLAN LLP
601 Lexington Avenue, Suite 3400
New York, New York 10022-4611
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
Email: RMescon@RobinsKaplan.com
        SFurst@RobinsKaplan.com

JAMES PATRICK SHEA, ESQ.
Nevada Bar No. 405
SCOTT D. FLEMING, ESQ.
Nevada Bar No. 5638
ARMSTRONG TEASDALE LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone:  702.678.5070
Facsimile:  702.878.9995
Email: jshea@armstrongteasdale.com
        sfleming@armstrongteasdale.com

*Counsel for Plaintiff, Sonoro Invest S.A.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SONORO INVEST S.A., a Panamanian corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT MILLER, an individual; ANDREW SHERMAN, an individual; COSTAS TAKKAS, an individual; and STEPHEN GOSS, an individual,<br><br>Defendants<br><br>and<br><br>ABAKAN, INC., a Nevada corporation,<br><br>Nominal Defendant. | Case No. 2:15-cv-00286<br><br>**FIRST AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff, Sonoro Invest S.A. ("Sonoro"), by and through undersigned counsel, hereby files this First Amended Verified Shareholder Derivative Complaint against Defendants Abakan, Inc. ("Abakan" or the "Company"), Robert Miller, Andrew Sherman, Costas Takkas, and Stephen Goss (Miller, Sherman, Takkas, and Goss, are hereinafter, collectively, the "Individual Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This action ("Action") arises from violations of fiduciary duties, gross mismanagement, self-dealing, fraudulent transfer and other business torts committed by Abakan's officers and directors.  Sonoro, a longstanding shareholder of Abakan, seeks to assert allegations of improper management against Abakan's officers and directors, who have damaged the Company by upstreaming value to related entities without adequate compensation to Abakan.  Federal jurisdiction over this Action is based upon diversity of citizenship.

2.      The egregious behavior of Abakan's officers and directors, and other subsequent events since the issuance of Sonoro's Demand to Abakan's Officers and Directors ("Demand") has left Sonoro with no other option but to bring this suit.  Individual Defendants have breached their obligations and shirked their responsibilities, in violation of court ordered injunctions and in contempt of court orders, and in evasion of judgments.  They have also failed to make any reasonable effort at addressing Sonoro's concerns and redressing their wrongs.  On August 14, 2015, Abakan was held in civil contempt by Judge Denise Cote of the United States District Court for the Southern District of New York for violating the terms of a preliminary injunction with respect to the conduct of its business, and on September 24, 2015, Judge Cote appointed a Receiver over Abakan.  A copy of the order appointing a Receiver (the "September 24 Order") is attached as Exhibit A to the Complaint.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1332, in that there is diversity of citizenship between Sonoro, Abakan, and the Individual Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d) in that Abakan is incorporated in the State of Nevada and maintains contacts in the District of Nevada-Las Vegas that would subject it to personal jurisdiction.

## THE PARTIES

5.     Sonoro is a Panamanian corporation with its address at Calle 53E Urbanizacion Marbella, MMG Tower, 16th Floor, Panama, Republic of Panama.  Plaintiff was a shareholder of Abakan at the time of all the transactions complained of in this Complaint.  This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

6.     Upon information and belief, Abakan is a Nevada corporation which, at all times relevant to this Action, had its principal place of business at 2665 South Bayshore Drive, Suite 450, Miami, Florida 33133.  Pursuant to the September 24 Order, Robert Seiden was appointed Receiver of the Company.  Mr. Seiden has maintained Abakan's offices in New York since his appointment. On November 15, 2015, involuntary bankruptcy petitions were filed against both Abakan and MesoCoat Inc. ("MesoCoat"), Abakan's wholly owned subsidiary, in the United States Bankruptcy Court of the Southern District of Florida, both of which were ultimately dismissed by the court.

7.     Upon information and belief, at all times relevant to the Complaint, Robert Miller was the Chief Executive Officer (CEO) and a member of the Board of Directors of Abakan ("Abakan's Board"); he was also the Chief Operating Officer (COO) of MesoCoat and a director of Powdermet Inc. ("Powdermet"), another of Abakan's subsidiaries.  Miller resides in Coral Gables, Florida.

8.     Upon information and belief, Andrew Sherman served as CEO of MesoCoat from 1996 to 2014, when he was replaced by Stephen Goss. Sherman served as CEO of Powdermet from 2007 until May 31, 2014, and was a member of Abakan's Board at all times relevant to the Complaint. Sherman resides in Mentor, Ohio.

9.     Upon information and belief, Costas Takkas served as the Chief Financial Officer (CFO) of Abakan, from February 7, 2014 through May 29, 2015, and was a member of Abakan's Board. Takkas resigned from his positions upon his arrest in the FIFA soccer scandal. Takkas resides in Miami Beach, Florida.

3

10.     Upon information and belief, Stephen Goss was the CEO of MesoCoat from June 2014 until approximately September 2015, and at all times relevant to the Complaint, was a director and COO of Abakan. Goss resides in Moore, South Carolina.

11.     Upon information and belief, each of the Individual Defendants personally profited in the wrongful actions alleged herein.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

12.     By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed Abakan the fiduciary obligations of good faith, trust, loyalty, and due care, and were required to use their utmost ability to control and manage the Company in a fair, just, honest and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of the Company so as to benefit the Company and not in furtherance of their personal interests or benefit.

13.     Individual Defendants owed Abakan the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligation of fair dealing.  The Individual Defendants, because of their positions of control and authority as directors and/or officers of Abakan, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

14.     Each Individual Defendant, by virtue of his position as a director and/or officer, owed to the Company the fiduciary duties of loyalty, good faith, candor, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.

15.     The Individual Defendants breached their duties of loyalty, candor, due care and good faith by allowing each other to cause, or by themselves causing, the Company to misrepresent its financial details and prospects, and engage in transactions for their personal benefit, as detailed herein, and by failing to prevent one another from taking such illegal actions.

4

## DEMAND

16.    On June 25, 2015, Sonoro demanded that the Abakan's Board conduct an internal investigation and commence a civil action with respect to the claims set forth herein, and that the Board hold the required and long-delayed annual meeting of shareholders. Thereafter, Individual Defendants took no substantive action to investigate Sonoro's allegations. A copy of the Demand attached as Exhibit B to the Complaint.

17.    While Abakan's Board initiated an inquiry into Sonoro's claims, this so called "investigation" was short-lived and almost immediately abandoned. In fact, Individual Defendants did not even hold the required annual stockholder's meeting or a special meeting so that directors could be duly elected.

18.    On September 24, 2015, Judge Cote found that Abakan had violated the terms of a preliminary injunction she had ordered; as a result, she appointed Robert Seiden as the Receiver for Abakan.

19.    Sonoro has been advised that the Receiver reviewed the Demand served prior to his appointment, but has confirmed that Abakan would be unable to pursue the claims asserted herein because it lacks the financial resources to do so.

20.    On November 15, 2015, involuntary bankruptcy petitions were filed against Abakan and MesoCoat in the United States Bankruptcy Court for the Southern District of Florida.  On November 19, 2015, Judge A. Jay Cristol ruled that there was no automatic stay in place because of the bankruptcy, and in the alternative, ordered the lifting of any such stay (Case Nos. 15-26606 & 15-29607) ("Orders to Remove Stay").  A copy of Judge Cristol's Orders to Remove Stay is attached as Exhibit C to this Complaint.

21.    On November 18, 2015, Sonoro and another of Abakan's secured creditors, George Town Associates, S.A. ("George Town") (collectively, the "Judgment Creditors") moved to dismiss the involuntary bankruptcy petitions against Abakan and MesoCoat ("Motions to Dismiss") based on the allegation that the petitions were filed in direct violation of Judge Cote's September 24 Order appointing a receiver for Abakan, and Judge Cote's August 18 order appointing a receiver for MesoCoat, as discussed in Paragraph 49 *infra* ("August 18 Order"). Upon information and belief, the

involuntary petitions were filed for no other purpose than to hinder the Receiver's efforts to bring a final resolution to the Judgment Creditors' claims. Upon information and belief, in further violation of the September 24 and August 18 Orders, Individual Defendants improperly and in bad faith solicited certain creditors to file the involuntary petitions in an effort to displace the Receiver, and prevent consideration of a global resolution proposed to Judge Cote in the District Court of the Southern District of New York.

22.     On December 14, 2015, the Bankruptcy Court for the Southern District of Florida dismissed the involuntary bankruptcy petitions against Abakan and MesoCoat pending before the court ("Dismissal Order"). A copy of Judge Cristol's Dismissal Orders is attached as Exhibit D to this Complaint. The court acknowledged Judgment Debtors' allegations regarding Individual Defendants' breach of the September 24 and August 18 Orders, and explained that while the petitions in the involuntary cases reflect a dispute with former management, "the bankruptcy court should not be used by former management as an alternate forum to the U.S. District Court when they do not favor the rulings of the District Court." As a result of Individual Defendants' bad faith, the Company expended significant resources in connection with the bankruptcy proceedings that would have otherwise been used to cover Abakan's costs and overwhelming debt.

23.     Shortly thereafter, on December 18, 2015, in the New York Litigation discussed in Paragraphs 46 through 51 *infra*, the Court approved a Satisfaction and Assignment Agreement between Judgment Creditors, Abakan and MesoCoat pursuant to which the Receiver, Robert Seiden, was authorized to provide for the transfer of 77.5% of the equity of MesoCoat to George Town, Sonoro, and various other creditors, in exchange for the release, satisfaction or assumption of certain secured and unsecured claims against MesoCoat and Abakan exceeding the aggregate sum of $6.2 million. The receivership is set to expire ninety-one (91) days from the consummation of the Satisfaction and Assignment and Agreement. Judge Cote's December 18, 2015 Order is attached as Exhibit E to the Complaint.

24.     Upon expiration of the receivership, management of the Company will likely revert back to the Individual Defendants and the remaining members of Abakan's Board who were in place prior to appointment of the Receiver.

25.     The individuals responsible for the Company's decline, most of whom are defendants in this action and who ignored the Demand made in June 2015, are likely the same people who will be managing the Company after the termination of the receivership. Thus, any further demand on Abakan to assert the claims set forth herein would be futile.

26.     Accordingly, Sonoro brings this action on behalf of the Company to seek appropriate damages.

## BACKGROUND FACTS

27.     According to Abakan's public disclosures, Abakan, through its subsidiary MesoCoat and MesoCoat's affiliate Powdermet, designs, develops, and markets advanced nano-composite materials, innovative fabricated metal products, highly engineered metal composites, and engineered reactive materials for applications in the oil and gas, petrochemical, mining, aerospace and defense, energy, infrastructure, and processing industries. Abakan's technology portfolio included high-speed, large-area metal cladding technology, long-life nano-composite anti-corrosion and wear-coating materials, and high-strength, lightweight metal composites.

28.     Abakan's operations are, and were, conducted through its related subsidiaries, MesoCoat and Powdermet. Initially, MesoCoat was owned 100% by Powdermet. Powdermet was in turn owned 52% by Sherman, 41% by Kennametal, Inc. (an unrelated company), and 7% by other unrelated parties. In 2009, Abakan purchased 79,334 shares of MesoCoat and acquired a fully diluted 34% interest in MesoCoat for $1,400,030. Thereafter, on March 21, 2011, the Company purchased 596,813 shares of Powdermet from Kennametal, Inc. equal to a 41% interest in Powdermet. On July 13, 2011, the Company obtained a fully diluted 18.5% equity interest in Powdermet for $2,800,000, thereby increasing its direct ownership of MesoCoat to a fully diluted 52.5% interest.

29.     From 2011 through 2013, Abakan seemed to be financially viable as a company. Abakan's shares reached a high of $3.38 on May 6, 2013. However, due to gross mismanagement, corporate waste, self-dealing, and other violations of duties to Abakan, that price was not long maintained. Indeed, by the following January, Abakan's stock was trading at only $1.25 per share. Currently, the share price is approximately $0.05 per share.

30. As Abakan's business deteriorated, Abakan's directors and officers diverted funds from legitimate and well-advised business applications to themselves and to related parties. As discussed below, they also failed to investigate or exercise due care and proper business judgment with respect to agreements entered into by Abakan and other obligations that it incurred.

**A. Individual Defendants Failed to Ensure that Abakan Received Adequate Consideration for an Investment in its Subsidiary MesoCoat**

31. When Abakan's financial situation started to deteriorate in 2014, Individual Defendants began to reposition or otherwise misapply funds to related entities that would otherwise have been dedicated to its business operations. On or about May 31, 2014, Abakan increased its ownership position in MesoCoat. Abakan converted an additional $6,200,000 of its investment in MesoCoat to equity. It also gave 310,000 Powdermet shares and 2,000,000 of Abakan restricted stock common shares to Powdermet. In exchange, it received 98,000 MesoCoat shares from Powdermet and 120,710 MesoCoat shares from MesoCoat. As a part of the transaction, MesoCoat also executed a promissory note to Powdermet for $198,167.85 ("2014 MesoCoat/Powdermet Transaction").

32. This transaction resulted in Abakan transitioning from an approximately 52.5% interest in MesoCoat to an 87.5% interest (90.95% interest including indirect ownership through Powdermet). Concurrently, Abakan had decreased its ownership position in Powdermet to 19.5% from 40.5%.

33. According to MesoCoat's press release ("Press Release"), the price Abakan paid for MesoCoat's shares was at a 58% premium to the last price that Abakan had converted already-invested capital to equity. This assertion was misleading and an inaccurate description of value. A copy of the Press Release attached as Exhibit F to the Complaint.

34. Individual Defendants did not conduct an independent evaluation of the value of MesoCoat before expending substantial assets in increasing its already-majority equity share. In its public disclosures, Individual Defendants stated that an independent business valuation would be conducted on or before August 31, 2014, but no such business valuation was ever conducted. Upon

information and belief, the only valuation ever conducted was by an unqualified forensic accountant that was not completed until <u>after</u> the transaction was closed.

35.    The basis for valuing MesoCoat was an aggressive discounted cash value, and the basis for valuing Powdermet was merely a book value.  This form of valuation made MesoCoat misleadingly look much more valuable as compared to Powdermet.  Thus, even the retroactive justification for undertaking this expensive transaction was flawed, and did not provide a basis for consummating the transaction at the prices involved.

36.    Upon information and belief, the above-summarized stock exchange agreement was not an arms-length transaction.

37.    Upon information and belief, Individual Defendants did not have sufficient information, and did not seek sufficient information, upon which to determine whether an additional investment in MesoCoat was worthwhile, or whether Abakan was receiving adequate value for its substantial investment.

38.    Upon information and belief, by not disclosing all of the relevant facts, not conducting the necessary research, and manipulating relevant valuations, Individual Defendants caused Abakan to pay an inflated price for the MesoCoat shares acquired in the 2014 MesoCoat/Powdermet Transaction - a breach of their duties of care, candor, and loyalty to the Company.

**B.  Abakan's Officers and Directors Purposefully Failed to Pay The Company's Debts on Several Occasions to Advance Their Own Financial Interests**

39.    On or about October 25, 2010, Sonoro acquired 1,660,000 restricted shares of Abakan in a private placement.  On or about December 29, 2010, Sonoro acquired 490,000 common shares of Abakan, with a value date of January 3, 2011.  Sonoro has never sold any of its shares.

40.    Abakan was also indebted to Sonoro by and through an Amended Convertible Promissory Note in the principal amount of $1,500,000 issued on March 17, 2011, a second Amended Convertible Promissory Note in the principal amount of $200,000 issued on June 7, 2011, and a Promissory Note in the principal amount of $405,000 issued on April 23, 2013 (collectively, the "Promissory Notes").  Ultimately, Abakan defaulted on these Promissory Notes; and, upon information and belief, the default ensued because Individual Defendants were transferring available

funds from the Company to advance their own personal interests.  The breach of these Promissory Notes led to a separate enforcement action in federal court, in the Southern District of Florida, at Civ. No. 14-23640 ("Florida Litigation").

41.     On May 15, 2015, Abakan and Sonoro reached a settlement in the Florida Litigation. Under the terms of the settlement, the Promissory Notes were replaced with a single Senior Convertible Promissory Note, in the principal amount of $2,915,000, bearing an interest rate of 5%, with a maturity date of February 29, 2016 ("Sonoro Note").  However, Abakan soon defaulted on this note as well.

42.     As a result of Abakan's reckless disregard for its obligations under the Sonoro Note and its subsequent default, Sonoro initiated arbitration proceedings on July 27, 2015. On October 2, 2015, the arbitrator granted Sonoro a consent award in the amount of $3,215,000, plus interest and taxable costs.

43.     Sonoro moved to confirm the consent award in the United States District Court of the Southern District of Florida, Civ No. 15-23691.  Final entry of judgment and confirmation of the award was granted by the court on October 7, 2015, further contributing to the Company's financial obligations.

44.     The Individual Defendants also failed to make timely Securities and Exchange Commission ("SEC") filings.  Abakan was required to file a 10-Q on April 14, 2015.  Instead it filed a request for an extension, stating that it would file the 10-Q in five days and that it required time to complete its consolidated financial statement.  It made no such filing until May 4, 2015. This unexcused failure to timely file SEC required reports was a violation of a covenant in a secured note with another creditor, George Town ("George Town Note"), for a principal amount of $1,341,963.34. This violation was a breach of the George Town Note and, along with other breaches, led to a default.

45.     The maturity date of the George Town Note was April 27, 2015.  Abakan did not pay down its obligation when it was due.

46.     As a result of the Company's default, on May 4, 2015, George Town brought six claims against Abakan in the Southern District of New York, Civ. No. 15-3435 (DLC) ("New York Litigation").  The New York Litigation sought *inter alia*: (i) recovery on the George Town Note

based on the defaults that occurred when Abakan failed to file a timely Form 10-Q and/or repay George Town; (ii) recovery from MesoCoat on a Guaranty agreement; (iii) a determination that it is entitled to exercise its remedies under § 7 of a Security Agreement, which would allow George Town to take possession of MesoCoat's assets; (iv) injunctive relief; and (v) appointment of a receiver.

47.     On May 6, 2015, Judge Cote issued a temporary restraining order restricting Abakan and MesoCoat from, *inter alia*, paying or declaring any dividend or distribution, repurchasing or otherwise acquiring any of its stock, incurring any indebtedness, or selling, leasing, or otherwise disposing any portion of significant assets "outside of its ordinary business without George Town's consent." A copy of the Temporary Restraining Order against Abakan and MesoCoat, dated May 6, 2015, attached as Exhibit G to the Complaint. On May 22, 2015, the May 6 temporary restraining order was converted into a preliminary injunction ("Preliminary Injunction").

48.     Notwithstanding this Preliminary Injunction, on July 27, 2015, barely a month after its issuance by the court, Abakan breached its terms, and the material covenants in Article II of the Sonoro Note and the George Town Note, by increasing its ownership in subsidiary, MesoCoat to 100%, in exchange for 20.5% of Abakan's minority ownership in Powdermet. Abakan acquired from Powdermet the remaining 11.9% of MesoCoat along with land and equipment worth $550,000, the extinguishment of existing inter-company debt of $486,000, the return of 400,000 outstanding Abakan shares to authorized capital, and $1,000,000 in cash ("2015 MesoCoat/Powdermet Transaction").

49.     On July 28, 2015, in response to Abakan's breach of the Preliminary Injunction, George Town filed a motion for contempt and for the appointment of a receiver. On August 14, 2015, the court found Abakan to be in civil contempt for violating the terms of the Preliminary Injunction, violations which were caused by Individual Defendants, and  subsequently issued the August 18 Order, appointing a Receiver over MesoCoat. A copy of the August 18 Order is attached as Exhibit H to the Complaint.

50.     On August 18, 2015, George Town was awarded summary judgment in the New York Litigation after the court found that Abakan was in default of the George Town Note and the Security Agreement, and MesoCoat was in violation of the Guaranty. Upon information and belief, it was the

1  lack of oversight by Individual Defendants, and their failure to act in conformity with their duty of

2  care with respect to the George Town Note, that ultimately led to Abakan's default.[1]

3       51.     Ultimately, Abakan's failure to pay on its notes to George Town, Sonoro, and its other

4  creditors was due to mismanagement, neglect, and/or the unlawful waste of Abakan's assets by and

5  through the acts and omissions of the Individual Defendants.  Upon information and belief, by

6  authorizing Abakan to participate in the 2014 MesoCoat/Powdermet Transaction, Individual

7  Directors unlawfully diverted funds that would otherwise have been used to pay down these notes for

8  their own personal interests.  It was this mismanagement and waste that led to the appointment of the

9  Receiver and eventually to the Company's bankruptcy.

10  **C. Other Forms of Neglect Have Substantially Injured Abakan**

11       52.     Individual Defendants used their positions of control to authorize a leasing

12  arrangement between Abakan's subsidiary, MesoCoat, and its affiliate Powdermet, and Sherman

13  Properties LLP, a related-party (a company incorporated by Sherman and in which he has an

14  economic interest). MesoCoat maintains 22,000 square feet of research and development space and

15  an 11,000 square foot clad pipe manufacturing facility located at 24112 Rockwell Drive, Euclid,

16  Ohio, each of which is leased from Powdermet on a sub-lease basis that runs through May 31, 2020.

17  The cost of the sub-lease for MesoCoat, per month, is $6,700, the full sum of which is directly paid to

18  Powdermet.  Powdermet maintains 48,000 square feet of research and development space located at

19  the same address - 24112 Rockwell Drive, Euclid, Ohio.  The cost of the lease is $6,800 per month,

20  adjustable on an annual basis, paid to Sherman Properties LLP. The term of the lease runs through

21  October 31, 2020, with the right to sub-lease the premises to MesoCoat. Sherman serves as the CEO

22  of Powdermet and is on Abakan's Board, making this a related-party transaction.  The leases for both

23  MesoCoat and Powdermet are for exceedingly long terms and above-market rates for the designated

24  office space.  Upon information and belief, this transaction was conducted to benefit Individual

25  Defendants at Abakan's expense.

---

[1] By incurring all of these debts and defaulting due to non-payment, Individual Defendants overwhelmingly increased Abakan's corporate liability.  By way of example, the George Town Note for $1,341,963.34 was increased by the Court, in its final judgment, to $1,770,932.03 because of Abakan's default.

53.     On November 11, 2014, Abakan also entered into a share subscription agreement with UP Scientech Materials Corp. ("UP Scientech"), pursuant to which UP Scientech purchased 7,500,000 voting common restricted shares of Abakan at a price of $0.40 per share for an aggregate purchase price of $3,000,000 ("UP Transaction"). The Company publicly stated that it would use the proceeds from the UP Transaction to pay off MesoCoat's general and administrative expenses, taxes, and utilities.  However, upon information and belief, Individual Defendants instead imprudently utilized the proceeds to disproportionately pay down personal related-party debts.  At the time, Individual Defendants were fully aware that Abakan was in default upon its notes, and that diverting these funds from the Company would drive it into further debt.

54.     Abakan's CFO, Costas Takkas, who, until recently, was responsible for signing Abakan's SEC filings, has been charged with corruption related to his engagement as former general secretary of the Cayman Islands Football Association by the U.S. Department of Justice. Takkas was arrested by Swiss authorities and extradition to the United States is pending.  His appointment as CFO by Abakan's Board exhibits a failure of oversight and exercise of judgment by the Board.  As a result of this failure, Takkas was improperly appointed and placed in a position to, and did, harm Abakan.

**D.  Demand for Investigation and Review**

55.     On June 25, 2015, in response to Individual Defendants' wrongful behavior, Sonoro made a Demand on Abakan's Board asking it to investigate the claims asserted herein and to pursue legal action to enforce the Company's legal rights.  Specifically, Abakan's officers and directors were asked to: (i) undertake (or cause to be undertaken) an independent internal investigation into the violations of Nevada and/or federal law by each member of management; (ii) commence a civil action against Individual Defendant to recover the damages sustained by Abakan, if alleged violations are found true, as a result of their breaches of fiduciary duties and violations of Nevada and/or federal law alleged herein; and (iii) immediately hold the required annual stockholder's meeting or a special meeting so that directors could be duly elected.

**E. Violations and Breaches Since Issuance of the Demand**

56.     Upon issuance of the Demand, Individual Defendants took various steps to evade the requested actions, demonstrating a conscious disregard for their duties and a blatant violation of the Demand. Abakan's Board failed to deliver on each and every request in the Demand.

57.     Because of the extremely high premium paid for MesoCoat's shares, the transfers made in Paragraphs 31 and 48 *supra* were made without Abakan receiving a reasonably equivalent value in exchange for the transfers. Upon information and belief, Raymond Tellini, an independent member of Abakan's Board, ultimately resigned from the Abakan Board due to Individual Defendants' improper activities, including, but not limited to, the 2014 and 2015 MesoCoat/Powdermet Transactions. A copy of Raymond Tellini's letter of resignation ("Resignation Letter"), attached hereto as Exhibit I to the Complaint.

58.     Upon information and belief, Abakan refused to provide Raymond Tellini, the head of its Audit Committee, a member of the Compensation Committee, the Nominating & Governance Committee, the Compliance & Ethics Committee, and an independent member of Abakan's Board, with the valuations and relevant documents necessary to make an informed decision regarding the 2015 MesoCoat/Powdermet Transaction, prior to the vote by the Abakan Board.

59.     On August 4, 2015, Abakan issued a $79,000 promissory note to Vis Vires Group, Inc. ("Vis Vires") providing for the conversion of such debt to equity at an abnormally high rate outside the ordinary course of business, which was never disclosed to the SEC ("Vis Vires Transaction"). Individual Defendants also authorized the Company to execute transfer agent instructions to irrevocably reserve 3,850,000 shares of the Company's common stock with the transfer agent for the benefit of Vis Vires for the conversion of the above aforementioned note. A copy of the August 4, 2015 Board Resolution authorizing the transaction is attached as Exhibit J to the Complaint. Not only was this act violative of the Preliminary Injunction, but Abakan apparently defaulted on the note, resulting in Vis Vires filing a Form 13G with the SEC dated December 7, 2015, disclosing that it now purportedly owns 7,942,158 Abakan shares, or 9.99% of the company. A copy of the Form 13G, dated December 7, 2015, is attached as Exhibit K to the Complaint.

60.    Because of the unfavorable conversion rate Individual Defendants negotiated for Abakan, the Vis Vires Transaction and Abakan's subsequent default threw the Company into further debt and diluted the value of already existing shares. Individual Defendants authorized this "death spiral financing" in breach of their fiduciary duties and to the detriment of the Company.

61.    Also, on September 15, 2015 Abakan filed a 10-K revealing for the first time that it had issued various convertible debt securities in excess of $500,000, and issued over 260,000 shares of its common stock to pay other creditors and as a bonus to an employee – yet another blatant violation of the Preliminary Injunction.[2]  *See* Exhibit G to the Complaint.  Thereafter, on September 24, 2015, Judge Cote found that Abakan had again violated the terms of the Preliminary Injunction and appointed a Receiver over Abakan itself.  *See* Exhibit A to the Complaint.

62.    In its Form 10-K/A filed on September 17, 2015, Abakan disclosed a $65,000 related-party loan payment, which, upon information and belief, Individual Defendants caused Abakan to make in breach of their fiduciary duties, as such capital should have been put towards paying down the Company's overwhelming debt.

63.    Upon information and belief, on or about September 16, 2015, Miller, with Goss' assistance, signed and submitted correspondence instructing Powdermet to divert the sum of $61,000 to an account in Abakan's name at Fifth Third Bank in Euclid, Ohio (the "Fifth Third Bank Account") for the purpose of frustrating George Town's judgment.  The following day, a check in the amount of $61,000 was deposited in the Fifth Third Bank Account.

---

[2] Paragraphs 5(c) and 5(d) of the Preliminary Injunction prohibit Abakan from:

c) Incurring any indebtedness, or otherwise assuming, guaranteeing, endorsing, contingently agreeing to purchase or otherwise becoming liable for the indebtedness of any other person, firm, partnership, joint venture or corporation, or grant or suffer to exist any lien on its assets, except only with respect to indebtedness expressly referenced in the Note, indebtedness to trade creditors or financial institutions incurred in the ordinary course of business and consistent with past practice, or borrowings for which the proceeds shall be used to repay George Town's Note;

d) Issuing any equity securities of Defendants, or any securities that are convertible, exercisable or exchangeable into equity securities of Defendants, except shares of common stock that are issuable (a) under any employee equity incentive plans in effort prior to the date of the Note, or (b) upon the exercise of conversion of securities that were outstanding prior to the date of the Note, provided that in each such case, issuances are made in accordance with the terms of the underlying plan or securities documents as in effect prior to the date of the Note and not pursuant to terms that have been amended after the date of this Note..."

*See* Exhibit G to the Complaint.

15

64.     On or about September 21, 2015, Goss caused the following transfers to be made by Abakan from the Fifth Third Bank Account:  (i) a $10,000 check was made to CFO Consultants, a company owned by Abakan's CFO, David Charbonneau, (ii) a $28,000 wire transfer was made to Goss, and (iii) a $22,000 cashier's check was paid to Chase Bank to satisfy credit card debt (collectively, the "Abakan Transfer").  These payments were made for the personal benefit of the Individual Defendants and constituted a breach of the Individual Defendants' duties to the Company.

65.     On October 28, 2015, in the Court of Common Pleas, Cuyahoga County, Ohio, Goss was sued for fraudulent conveyance of funds in connection with the activities briefly described in Paragraphs 63 and 64 *supra*.  Goss caused the transfers set forth in the preceding paragraphs to be made by Abakan with an actual intent to hinder, delay, and defraud, and without providing Abakan with a reasonably equivalent value in exchange for the transfer or obligation.  Upon information and belief, at the time of the fraudulent transfers, Abakan was insolvent and unable to pay off several of its debts to its creditors.

## COUNT ONE
### (Breach of Fiduciary Duty- Against Individual Defendants)

66.     Sonoro hereby repeats and realleges paragraphs 1 through 65 above as if fully set forth herein.

67.     The Individual Defendants violated their fiduciary duties to the Company by engaging in activities designed to reduce and/or eliminate the value of the Company for the benefit of their own personal and financial interests.  Such violations include: taking value for their own profit, exploiting various opportunities that belonged to the Company, and extending loans to evade creditors and retain the funds for their personal benefit.

68.     As directors and officers of Abakan, the Individual Defendants owed fiduciary duties to the Company, including a duty of loyalty that required the Individual Defendants to elevate the interests of the Company above their own personal and financial interests.

69.     By authorizing Abakan to enter into all of the inequitable transactions and dealings set forth above, Individual Defendants' prioritized their personal interests over those of the Company and breached their duty of loyalty.

16

70.     Individual Defendant breached this duty of loyalty by entering into the UP Scientech Transaction and diverting funds that were intended to go toward paying off MesoCoat's expenses, and instead used the proceeds to pay down their own related-party debts.

71.     Individual Defendants also breached their duty of loyalty by obligating Abakan, on behalf of MesoCoat and Powdermet, to enter into inequitable lease agreements with related-party Sherman Properties LLP.  Individual Defendants prioritized their own financial interests over those of the Company.

72.     As Abakan's officers and directors, Individual Defendants, also had an obligation to act upon an informed basis.  They were required to review all relevant, material information and act with the requisite care in making business decisions.

73.     Individual Defendants failed to exercise due care in satisfying their obligations under the Promissory Notes, the Sonoro Note and the George Town Note, causing Abakan to needlessly default on its obligations.

74.     Individual Defendants were also in breach of their duty of due care to the Company when they failed to conduct a proper valuation of the 2014 and 2015 MesoCoat/Powdermet Transactions.  Abakan was forced to pay an extremely high premium for MesoCoat's shares without receiving reasonably equivalent value in exchange for the transfer.

75.     Additionally, Individual Defendants failed to exercise due care with regard to compliance with SEC requirements for timely disclosures.

76.     As directors and officers of Abakan, Individual Defendants also had a duty of candor and were obligated to disclose all material facts concerning Abakan to other directors and officers and to the shareholders.

77.     In violation of this duty of candor, Individual Defendants withheld, suppressed and/or misrepresented significant material information pertaining to Abakan, including, but not limited to, significant and irreconcilable conflicts of interests of certain directors and officers, as well as the role these conflicted directors and officers took in concealing and/or manipulating material financial information, including information pertaining to acquisitions, trades and related-party transactions, and known or obvious acts of self-dealing by one or more of the other officers and directors.

78.    Individual Defendants were in breach of their duty of candor to Abakan when they failed to disclose their personal interests in the 2014 and 2015 MesoCoat/Powdermet Transactions.

79.    The acts of the Individual Defendants set forth above constitute a breach of their fiduciary duties as directors and officers, the breach of which involved intentional misconduct, fraud, and a knowing violation of the law. As a result of the intentional misconduct and breach of its duties alleged herein, the Individual Defendants are in violation of Nev. Rev. Stat. § 78.138(7) and are liable to the Company.

80.    Since none of the related-party transactions set forth above fall under the exceptions provided for in Nev. Rev. Stat. § 78.140, warranting protection from a void or voidable related-party transaction, the agreements and transactions entered into by the Individual Defendants, were interested party transactions, and therefore are null and void.

81.    Ultimately, by engaging in these acts, the Individual Defendants breached their fiduciary duties to Abakan, and are liable to the Company for damages.

## COUNT TWO
### (Unjust Enrichment - Against Individual Defendants)

82.    Sonoro hereby repeats and realleges paragraphs 1 through 81 above as if fully set forth herein.

83.    By their actions alleged herein, Individual Defendants received certain valuable rights and benefits to which they were not entitled.

84.    By entering into the UP Scientech Transaction, Individual Defendants diverted funds that were intended to go toward paying off MesoCoat's expenses, and instead used the proceeds, to which they were not entitled, to disproportionately pay down their own related-party debts.

85.    Under the leasing arrangement with Sherman Properties LLP, Abakan is obligated, through MesoCoat and Powdermet, to pay above-market rates for excessively long terms.  This leasing arrangement originated for Individual Defendants' personal gain as the requisite lease payments go directly to a related-party entity.

18

86.     Individual Defendants' enrichment is directly and casually related to the Company's decline and detriment.  Ultimately, Individual Defendants personally profited by engaging in the wrongful conduct set forth above, at Abakan's expense.

87.     Individual Defendants knowingly and willingly accepted the benefits conferred upon them.  The facts and circumstances of this case are such that it would be unfair, unjust, and unconscionable to permit the Individual Defendants, by and through their interests in their other companies, to retain the benefits conferred upon them.

### COUNT THREE
### (Gross Mismanagement - Against Individual Defendants)

88.     Sonoro hereby repeats and realleges paragraphs 1 through 87 above as if fully set forth herein.

89.     By their actions alleged herein, the Individual Defendants abandoned and abdicated their responsibilities and fiduciary duties with regards to prudently managing Abakan's assets and business in a manner consistent with the operations of a publicly held corporation.

90.     Individual Defendants each had a duty to Abakan and its shareholders to prudently supervise, manage, and control Abakan's operations.

91.     Individual Defendants grossly mismanaged their fiduciary duties by failing to comply with the timely disclosures required by the SEC.

92.     Individual Defendants also engaged in gross mismanagement by failing to satisfy their obligations under the Promissory Notes, the Sonoro Note, and the George Town Note, causing Abakan to needlessly default, in an effort to advance their own personal interests.

93.     By breaching the Preliminary Injunction, Individual Defendants put their personal interests before the interests of the Company and in doing so, grossly mismanaged Abakan's resources.

94.     Additionally, Individual Defendants grossly mismanaged Abakan by allowing the unauthorized conveyance of funds from the Company to related parties, as was the case with the Abakan Transfer.

19

95.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breach of duty alleged herein, Abakan has sustained and will continue to sustain significant damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court order and adjudge the following relief in favor of Sonoro, and against Individual Defendants:

A.     Recoupment, disgorgement, or other return of funds to Abakan that were wrongfully diverted from Abakan's legitimate business enterprises;

B.     Monetary damages for Abakan;

C.     Punitive damages for Abakan;

D.     Costs, disbursements, and attorneys' fees for Sonoro; and

E.     Any further and additional relief the Court deems just, proper, and equitable.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: December 29, 2015

By: */s/ James Patrick Shea*
Richard Mescon, Esq.
(*pro hac vice* to be submitted)
Sherli Furst, Esq.
(*pro hac vice* to be submitted)
Robins Kaplan LLP
601 Lexington Avenue, Suite 3400
New York, New York 10022-4611
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
RMescon@RobinsKaplan.com
SFurst@RobinsKaplan.com

James Patrick Shea, Esq.
Scott D. Fleming, Esq.
Armstrong Teasdale LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Main: (702) 678-5070
Direct: (702) 473-7079
Cellular: (702) 743-6263
Jshea@ArmstrongTeasdale.com
SFleming@ArmstrongTeasdale.com

*Attorneys for Plaintiff, Sonoro Invest S.A.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

In accordance with Fed. R. Civ. P. 23.1(b), and pursuant to 28 U.S.C. § 1746(1), I, *Anton Wyss* verify under penalty of perjury under the laws of the United States of America that I am the *Director* of SONORO INVEST, S.A., the Plaintiff in the above-entitled action. I have reviewed the facts set forth in the foregoing Verified Shareholder Derivative Complaint and confirm that same are true and correct to be the best of my knowledge, except as to those matters stated upon information and belief, which I believe to be true.

DATED: December 27, 2015

21

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

GEORGE TOWN ASSOCIATES S.A.,

            Plaintiff,

v.

ABAKAN, INC. and MESOCOAT, INC.,

            Defendants.

Case No. 15-cv-3435 (DLC)

---

## [PROPOSED] ORDER

    Plaintiff, George Town Associates S.A. ("George Town") filed a Complaint on May 4, 2015, seeking damages and equitable relief. On June 18, the plaintiff moved for summary judgment and to dismiss the defendants' counterclaim. On July 28, the plaintiff moved for an order finding Abakan, Inc. ("Abakan") and MesoCoat, Inc. ("MesoCoat") in contempt and for the appointment of receiver over MesoCoat. Following a hearing on August 14, 2015, Robert Seiden was appointed as Receiver over MesoCoat. On August 18, the plaintiff's June 18 motion for summary judgment was granted. On September 17, the plaintiff moved for an order finding Abakan in contempt and for the appointment of receiver over Abakan. Following a hearing on September 24, Robert Seiden was appointed as Receiver over Abakan.

    The Court has considered the pleadings, declarations, exhibits, and memoranda filed by the parties and the record at the evidentiary hearing held on September 24, and finds that:

    1.    This Court has jurisdiction over the subject matter of this case and all parties thereto;

    2.    There is good cause to believe that absent the relief requested herein, George Town will suffer irreparable injury;

3.       Abakan defaulted on the secured promissory note at issue in this action and summary judgment was entered in George Town's favor on August 18, 2015.  Weighing the equities, considering George Town's success on the merits, and for the reasons stated on the record on September 24;

4.       Robert Seiden ("Receiver") is hereby appointed as receiver over Abakan's business and business assets with the responsibilities and powers stated below:

   a) Holding cash and payment obligations in trust for George Town;

   b) Taking possession of the collateral and, for that purpose, entering, with the aid and assistance of any person, any premises where the collateral is or may be placed and remove the same;

   c) Exercising discretion in all voting and consensual rights of Abakan, receiving cash dividends, interest, and other payments on the collateral, and exercising all rights with respect to the collateral as if it were the sole and absolute owner thereof;

   d) Operating Abakan's business using the collateral and to assign, sell, lease, or otherwise dispose of all or any part of the collateral, without demand upon or notice to Abakan;

   e) Notifying Abakan's account debtors and obligors to make payments directly to George Town, and enforcing Abakan's rights against such account debtors and obligors;

   f) Directing any financial intermediary or any other entity holding any investment property to transfer the same to George Town;

   g) Transferring all intellectual property registered in Abakan's name with the U.S. Patent and Trademark Office (or the U.S. Copyright Office) into George Town's name;

   h) Disposing of the collateral; and

   i) Using, licensing, or sublicensing any intellectual property owned by Abakan.

5.       In furtherance of his duties and responsibilities, the Receiver shall have the full power of an equity receiver over Abakan, its agents, representatives, officers, employees and affiliates, and over all of the funds, assets, accounts, properties, premises, claims, books and

records of Abakan, whether owned by Abakan in whole or in part, or directly or indirectly, including but not limited to the power and authority to:

    a) Operate and administer the business of Abakan subject to further order of this Court, with full authority to perform all acts necessary or incidental thereto, including the making of such payments and disbursements as may be necessary and advisable for the preservation of the businesses; and

    b) Exercise all other powers, rights and authority customarily exercised by an equity receiver.

6.    Abakan and its officers, directors, agents, servants, employees, successors, assigns, subsidiaries, affiliates, corporations, and other persons or entities under the control of any of them, or under common control with them, shall fully cooperate with and assist the Receiver, including by answering all questions concerning Abakan, and shall take no action, directly or indirectly, to hinder, obstruct or interfere with the Receiver or his retained professionals or their agents in the conduct of their duties.

7.    The Receiver shall have the exclusive power to file, proceed and operate in and under, any case under Title 11 of the United States Code, by placing Abakan voluntarily in a case under any applicable Chapter of said Title, and to operate the businesses thereof as debtor-in-possession or trustee, in which case he shall at all times be subject to and governed by all provisions thereof and of all statutes, rules and administrative requirements related thereto, including without limitation, the rules and guidelines pertaining to compensation and reimbursement of expenses.

8.    The Receiver is hereby vested with, and he is authorized, directed and empowered to exercise, all of the powers of Abakan's officers, directors, partners, employees, representatives, or persons who exercise similar powers and perform similar duties; and Abakan, and each of them, and their officers, partners, agents, employees, representatives, directors,

successors in interest, attorneys in fact and all persons acting in concert or participating with

them, are hereby divested of, restrained, enjoined and barred from exercising any of the powers

vested herein in the Receiver.

IT IS FURTHER ORDERED that any and all actions taken by the Receiver pursuant to

this Order shall be effectuated in a manner which is consistent with *both* federal and state laws as are

applicable to a receiver.  The Receiver's liability, if any, shall be consistent with his role as a

fiduciary.

IT IS FURTHER ORDERED that the Receiver shall *must* provide statements of account not

less than every 30 days to the parties in this action.

IT IS FURTHER ORDERED that, prior to either assigning, disposing of, transferring, or

hypothecating any collateral belonging to Abakan with a value of in excess of $50,000.00, the

Receiver shall first give 7 days prior notice to the parties in this action

SO ORDERED:

Dated:      New York, New York
            September 24, 2015

            11:15 am.

                                          _____
                                          DENISE COTE
                                          United States District Judge

9.  The Receiver shall have access to the Books and Records
Of Abakan and/or Mesocoat in possession of the U.S. Marshal,
Southern District of Florida, giving simultaneous notice to
all Counsel.                                                    dlc

4

# EXHIBIT B

Sonoro Invest S.A.
Calle 53E
Urbanizacion Marbella
MMG Tower
Piso 16
Panama City, Panama

June 25, 2015

*U.S. Mail*

Abakan, Inc.,
c/o Robert Miller
2665 S. Bayshore Drive
Suite 450
Miami, FL 33133

Re:   Sonoro Invest, SA

Dear Mr. Miller:

Sonoro Invest, SA, a Panamanian corporation is both a shareholder and creditor to Abakan, Inc. ("Abakan"). Sonoro purchased common shares of Abakan on June 8, 2011 and retains such ownership through today. Pursuant to Federal Rule of Civil Procedure 23.1(b)(3) and comparable State procedural requirements, we write on behalf of Sonoro and those similarly situated to demand that Abakan's Board of Directors (the "Board") take action to remedy breaches of fiduciary duties, violations of law (including errors, misstatements, misleading statements, acts, omissions, neglect, and/or breaches of duties in official capacities) by certain current and/or former directors and executive officers of Abakan, including Robert Miller, Costas Takkas, Stephen Goss, and Andrew Sherman. Collectively, the foregoing executive officers and directors of the Company will be referred to herein as "Management."

As you are aware, by reason of their positions as officers and directors of Abakan and because of their ability to control the business and corporate affairs of Abakan, Management owed and owes Abakan and its shareholders the fiduciary obligations of good faith, loyalty, and due care, and are required to use their utmost ability to control and manage Abakan in a fair, just, honest, and equitable manner. Sonoro believes that Management has violated these core fiduciary duty principles, causing Abakan to suffer damages. In particular, Management has caused Abakan to face significant challenges by failing to properly manage its corporate affairs, failing to hold required stockholder meetings, failing to make required SEC filings, wasting corporate assets, failing to disclose related party transactions, and failing to investigate proposed business transactions in accordance with their duties of care and other obligations.

75612867.1

JUNE 25, 2015                          U.S. MAIL
PAGE 2

Based upon the events described herein, Sonoro demands that the Board: (i) undertake (or cause to be undertaken) an independent internal investigation into the violations of Nevada and/or Federal law by each member of Management; (ii) commence a civil action against each member of Management to recover for the benefit to Abakan the amount of damages sustained by Abakan as a result of their breaches of fiduciary duties and violations of Nevada and/or federal law alleged herein; (iii) immediately hold the required annual stockholder's meeting or a special meeting so that directors can be duly elected.

### A. The Board of Directors has failed to call an annual stockholders meeting for at least four years.

Under Nevada Revised Statutes § 78.330, directors of every corporation must be elected at the annual meeting of stockholders by a plurality of the votes cast at the election. According to the Bylaws, "Directors shall be elected at the Annual Meeting of the stockholders of [Abakan]. . . ." (Bylaws, Art. IV, Sec. 1.) The Board has the authority to set the time, date, and place for the annual meeting – but the Bylaws of Abakan require that it take place within 120 days after the end of the prior fiscal year. (Bylaws, Art. III Sec. 2.) The last fiscal year ended May 31, 2014. Therefore, the stockholder meeting was required to occur on or before September 28, 2014. Thus, as of the writing of this demand, the annual meeting for 2014 was over seven months overdue.

Under Nevada law, "[i]f any corporation fails to elect directors within 18 months after the last election of directors required by NRS 78.330, the district court has jurisdiction in equity, upon application of any one or more stockholders holding stock entitling them to exercise at least 15 percent of the voting power, to order the election of directors in the manner required by NRS 78.330." NRS 78.345. Here, Abakan has failed to have an election of directors within the last 18 months. Indeed, as far as Sonoro can discover, Abakan has *never* elected directors pursuant to state law and in accordance with its own Bylaws.

As a result, Sonoro demands that the Board of Directors calls either the long-overdue annual meeting or a special meeting in order to address the business of Abakan, including the election of directors.

75612867.1

JUNE 25, 2015                              U.S. MAIL
PAGE 3

---

   B.  **Management has approved transactions without sufficient investigation or information, and Abakan has been harmed as a result.**

On or about May 31, 2014, Abakan converted $6,200,000 of its investment in MesoCoat to equity. It also gave 310,000 Powdermet shares and 2,000,000 of Abakan restricted stock common shares to Powdermet. In exchange, it received 98,000 MesoCoat shares from Powdermet and 120,710 MesoCoat shares from MesoCoat. As a part of the transaction, MesoCoat also executed a promissory note to Powdermet for $198,167.85. This transaction resulted in Abakan transitioning from approximately 52.5% interest in MesoCoat to an 87.5% interest (90.95% interest including indirect ownership through Powdermet). Abakan simultaneously decreased its ownership position in Powdermet to 19.5% from 40.5% as a result of this transaction.

According to MesoCoat's press release, the price Abakan paid for MesoCoat's shares was a 58% premium to the last price that Abakan converted already-invested capital to equity. Abakan did not conduct an independent evaluation of the value of MesoCoat before expending substantial assets in increasing its already-majority equity share. Abakan stated in public disclosures that an independent business valuation would be conducted on or before August 31, 2014, but no such business valuation was conducted. Upon information and belief, the only business valuation ever conducted was by a forensic accountant unqualified to conduct a business valuation. In addition, the basis for valuing MesoCoat was an aggressive discounted cash value, and the basis for valuing Powdermet was merely a book value. These mismatched forms of valuation made Mesocoat look more valuable as compared to Powdermet. Thus, even the retroactive justification for undertaking this expensive transaction was flawed, and does not provide a basis for consummating the transaction at the prices involved.

Because of the extremely high premium paid for MesoCoat's shares, such transfer was made without Abakan receiving a reasonably equivalent value in exchange for the transfer. As a result of this related-party transaction, Abakan suffered a loss to its net resources and its ability to meet its other financial obligations. Because of the lack of investigation, Management violated their duties of care. Sonoro demands that the Board perform an independent investigation into failure to take due care, acts of self-dealing, fraud, or other violations of fiduciary duties and Nevada/federal law with respect to this transaction, and/or any other transactions with related parties.

75612867.1

JUNE 25, 2015                                        U.S. MAIL
PAGE 4

---

    **C.  Management has engaged in self-dealing acts, and Abakan has been harmed as a result.**

According to public filings, Abakan received notice of a non-public fact finding inquiry from the Securities and Exchange Commission on November 21, 2014, with a formal order to produce certain documentation. The Commission seeks to determine whether there have been any violations of federal securities laws. The Commission has subpoenaed Abakan regarding potential undisclosed related-party transactions concerning Investor Relations firms and potential kickbacks paid by Mr. Miller to a Wells Fargo broker.

As a result, Sonoro demands that the Board perform an independent investigation into acts of self-dealing, fraud, or other violations of fiduciary duties and Nevada/federal law with respect to this transaction, or any other transactions with related parties.

    **D.  Management has failed to apply proceeds of a private placement as represented to lenders and shareholders, and has instead paid the proceeds to pay off related party loans.**

Abakan initiated a private placement of up to eighteen million seven hundred and fifty thousand (18,750,000) shares of its restricted common stock, at a price of $0.40 a share. According to public disclosures, Abakan undertook this transaction:

> to realize and extinguish debt of up to seven million five hundred thousand dollars ($7,500,000), to support ongoing operations, retire outstanding debt and bolster product development. The placement has realized $427,800 in cash proceeds as of the filing date of this report and subsequent to the filing date of this report, is expected to include the extinguishment of debt in the amount of $764,000, in proceeds realized since the annual period end, and an additional $1,700,000 in proceeds realized prior to the annual period end. The Company has further allocated $4 to $5 million dollars of the private placement to secure an industry partner, which expectation, if realized, will occur subsequent to the filing date of this report. The

75612867.1

JUNE 25, 2015                                 U.S. MAIL
PAGE 5

---

Company does not intend to close this private placement prior to realizing the aforementioned expectations.

In a transaction document with UP Scientech that was also publicly disclosed, Abakan and its subsidiary MesoCoat stated that proceeds from the UP Scientech transaction would be used to pay MesoCoat general and administrative expense, taxes, and utilities, PComp capex and consumables, meet the Cermaclad budget, meet MesoCoat's accounts payable, including to related subsidiary Powdermet, "Alberta," and Abakan general and administrative expenses and accounts payable.

Management failed to apply the proceeds from the private placement transaction as it disclosed. Instead, it utilized the proceeds to disproportionately pay down related-party debts at the expense of Abakan and its other creditors. As a result, Abakan has been forced to defend several lawsuits, including one asserted by Sonoro, seeking repayment on defaulted Notes. Sonoro demands that the Board perform an independent investigation into acts of self-dealing, fraud, or other violations of fiduciary duties and Nevada/federal law with respect to this transaction, and/or any other transactions with related parties.

### E. Abakan has suffered from gross mismanagement and waste.

Akaban has also suffered because of Management's failure to make timely SEC filings.  Akaban was required to file a 10-Q on April 14, 2015. Instead it filed an extension, stating that it would file the 10-Q in five days and that it required time to complete its consolidated financial statement. It made no such filing until May 5, 2015. This unexcused failure to timely file SEC required reports was one of the reasons it fell into default on a Note for a principal amount of $1,341,963.34 to George Town Associates S.A., a Note that required compliance with such SEC requirements.

Akaban has also suffered because of Management's failure to make required payments of its financial obligations. Akaban has failed to pay its notes to creditors George Town, Sonoro and to Joe T. Eberhard. Failure to pay these notes is due to mismanagement, neglect, or the unlawful divestiture of Akaban's assets by and through its offers and directors.

75612867.1

JUNE 25, 2015                                    U.S. MAIL
PAGE 6

---

### F.  The Board wasted assets by hiring Investor Relations firms.

Mr. Miller and the Board have wasted corporate assets by retaining multiple IR firms at the same time. These acts incurred in unnecessary fees, and an IR firm investment that is overly inflated for a business of Abakan's size. As a result, Sonoro demands that the Board perform an independent investigation into acts of self-dealing, fraud, or other violations of fiduciary duties and Nevada/federal law with respect to this transaction, or any other transactions with related parties.

### G.  Costas Takkas unlawfully abused his position with FIFA.

In addition to the above, Abakan's CFO, who is responsible for signing Abakan's SEC filings, has been charged with corruption related to his engagement as former general secretary of the Cayman Islands Football Association by the US Department of Justice. His appointment as CFO by the board violates fiduciary duties, including the duty of care, by the Board because it constitutes further evidence of a failure of oversight and exercise of judgment by the Board. As a result of this failure of care and oversight, Mr. Takkas was improperly appointed and was placed in a position to harm Abakan and its shareholders. As a result, Sonoro demands that the Board perform an independent investigation into acts of self-dealing, fraud, or other violations of fiduciary duties and Nevada/federal law with respect to his appointment and/or his actions while in office.

In summary, Sonoro demands that the Board perform an independent investigation into acts of self-dealing, fraud, waste, or other violations of fiduciary duties, duties of care, and Nevada/federal law with respect to these transactions. An independent attorney should be appointed in connection with this investigation. If within a reasonable period of time, not to exceed thirty days after receipt of this letter, the Board has not commenced an action and taken the other measures as demanded herein, Sonoro will commence a shareholder's derivative action on behalf of the Company seeking appropriate relief.

75612867.1

JUNE 25, 2015                              U.S. MAIL
PAGE 7

---

     Sonoro reserves the right to add additional claims as they are uncovered during its ongoing investigation.

                                Sincerely,

                                Sonoro Invest S.A.

LAA/bmk

                                    **Anton Wyss**

cc:   Kevin Chen
      Stephen Goss
      Ryan Owen
      Andrew Sherman
      Raymond Tellini

75612867.1

# EXHIBIT C



**ORDERED in the Southern District of Florida on December 1, 2015.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re:                                              Case No. 15-29606-BKC-AJC

ABAKAN, INC.,                                       Chapter 11

     Alleged Debtor.

_____/

In re:                                              Case No. 15-29607-BKC-AJC

MESOCOAT, INC.,                                     Chapter 11

     Alleged Debtor.

_____/

**ORDER DETERMINING (A) THE AUTOMATIC STAY PURSUANT TO 11
U.S.C. § 362(a) IS INAPPLICABLE DURING THE GAP PERIOD BETWEEN
THE FILING OF AN INVOLUNTARY PETITION UNDER 11 U.S.C. § 303 AND
AN ORDER FOR RELIEF UNDER 11 U.S.C. § 303(h); AND (B)
ALTERNATIVELY, THE AUTOMATIC STAY IS LIFTED IN CONNECTION
WITH THE PENDING ACTIONS BEFORE THE NY DISTRICT COURT AND
SECOND CIRCUIT COURT OF APPEALS**

THIS CAUSE came before the Court for hearing on November 19, 2015 upon the Motions of Petitioning Creditors for (i) Removal of Equity Receiver; (ii) Appointment of Interim Trustee Pursuant to 11 U.S.C. § 1104(a)(2); and (iii) Entry of an Order Directing the Receiver to Turnover the Alleged Debtor's Property to the Trustee [ECF No. 7 in Case No. 15-29607-BKC-AJC; ECF No. 5 in Case No. 15-29606-BKC-AJC] (the "Motions").   At the hearing, for the reasons stated on the record, the Court continued the Motions, pending a determination of whether an order for relief should and will be entered in this case. An evidentiary hearing to determine if relief will be ordered is set by separate order, and will be held on January 13, 2016.

In the interim, the Court ruled that the automatic stay pursuant to section 362(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") is inapplicable during the gap period between the filing of an involuntary petition under section 303 of the Bankruptcy Code and an order for relief under section 303(h) of the Bankruptcy Code (the "Gap Period").   Accordingly, the United States District Court for the Southern District of New York, in Case No. 1:15-CV-3435-DLC, and the United States Court of Appeals for the Second Circuit, in Case No. 15-2906, may proceed in all matters pending, or which will be pending, before them concerning Abakan, Inc. and/or MesoCoat, Inc., until such time as an order for relief is entered in these involuntary cases.

The Court is informed that U.S. District Judge Denise L. Cote has reset for hearing the approval of that certain transaction [to extinguish debt of Abakan, Inc. and/or MesoCoat, Inc. in exchange for assets] proposed by the equity receiver, and the Court looks forward to Judge Cote's decision with respect to approval of that transaction.   This Court appreciates the patience of U.S. District Judge Denise L. Cote and determination in

2

concluding this matter. The Court is aware of the reputation of Judge Cote and has full confidence in her ability to appropriately deal with the related issue pending before her.

If it should be determined that this Court is incorrect and the automatic stay applies during the Gap Period, the automatic stay is lifted during the Gap Period pursuant to section 362(d) of the Bankruptcy Code with respect to all actions and proceedings in connection with or related to Abakan, Inc. and MesoCoat, Inc., pending before the United States District Court for the Southern District of New York, and any related matters pending before the United States Court of Appeals for the Second Circuit. If relief is ordered in this case after the January 13, 2016 evidentiary hearing, the automatic stay shall apply, or be reimposed, as the case may be.

As a result of the Court's foregoing determination(s), the Secured Judgement Creditors' Motion for Order (i) Dismissing Involuntary Petition Pursuant to Section 305 of the Bankruptcy Code, or, in the Alternative, (ii) for Stay Relief [ECF No. 22 in Case No. 15-29607-BKC-AJC; ECF No. 20 in Case No. 15-29606-BKC-AJC] as amended [ECF No. 27 in Case No. 15-29607-BKC-AJC; ECF No. 21 in Case No. 15-29606-BKC-AJC] and the (b) Receiver's Motion for Entry of An Order Clarifying or Declaring that the Automatic Stay does not Apply [ECF No. 23 in Case No. 15-29607-BKC-AJC; ECF No. 22 in Case No. 15-29606-BKC-AJC] are denied in part, as moot, without prejudice to the motions being renewed at or after the January 13, 2016 evidentiary hearing on the involuntary petitions.

IT IS SO ORDERED.

### 

Linda Leali, Esq. is directed to mail a copy of this Order to all interested parties immediately upon receipt of this Order and shall filed a certificate of service with the Clerk of the Court.

3



**ORDERED in the Southern District of Florida on December 1, 2015.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | Case No. 15-29606-BKC-AJC |
| ABAKAN, INC., | Chapter 11 |
|     Alleged Debtor. | |
| _____/ | |
| In re: | Case No. 15-29607-BKC-AJC |
| MESOCOAT, INC., | Chapter 11 |
|     Alleged Debtor. | |
| _____/ | |

**ORDER DETERMINING (A) THE AUTOMATIC STAY PURSUANT TO 11
U.S.C. § 362(a) IS INAPPLICABLE DURING THE GAP PERIOD BETWEEN
THE FILING OF AN INVOLUNTARY PETITION UNDER 11 U.S.C. § 303 AND
AN ORDER FOR RELIEF UNDER 11 U.S.C. § 303(h); AND (B)
ALTERNATIVELY, THE AUTOMATIC STAY IS LIFTED IN CONNECTION
WITH THE PENDING ACTIONS BEFORE THE NY DISTRICT COURT AND
SECOND CIRCUIT COURT OF APPEALS**

THIS CAUSE came before the Court for hearing on November 19, 2015 upon the Motions of Petitioning Creditors for (i) Removal of Equity Receiver; (ii) Appointment of Interim Trustee Pursuant to 11 U.S.C. § 1104(a)(2); and (iii) Entry of an Order Directing the Receiver to Turnover the Alleged Debtor's Property to the Trustee [ECF No. 7 in Case No. 15-29607-BKC-AJC; ECF No. 5 in Case No. 15-29606-BKC-AJC] (the "Motions").   At the hearing, for the reasons stated on the record, the Court continued the Motions, pending a determination of whether an order for relief should and will be entered in this case. An evidentiary hearing to determine if relief will be ordered is set by separate order, and will be held on January 13, 2016.

In the interim, the Court ruled that the automatic stay pursuant to section 362(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") is inapplicable during the gap period between the filing of an involuntary petition under section 303 of the Bankruptcy Code and an order for relief under section 303(h) of the Bankruptcy Code (the "Gap Period").  Accordingly, the United States District Court for the Southern District of New York, in Case No. 1:15-CV-3435-DLC, and the United States Court of Appeals for the Second Circuit, in Case No. 15-2906, may proceed in all matters pending, or which will be pending, before them concerning Abakan, Inc. and/or MesoCoat, Inc., until such time as an order for relief is entered in these involuntary cases.

The Court is informed that U.S. District Judge Denise L. Cote has reset for hearing the approval of that certain transaction [to extinguish debt of Abakan, Inc. and/or MesoCoat, Inc. in exchange for assets] proposed by the equity receiver, and the Court looks forward to Judge Cote's decision with respect to approval of that transaction.  This Court appreciates the patience of U.S. District Judge Denise L. Cote and determination in

2

concluding this matter. The Court is aware of the reputation of Judge Cote and has full confidence in her ability to appropriately deal with the related issue pending before her.

If it should be determined that this Court is incorrect and the automatic stay applies during the Gap Period, the automatic stay is lifted during the Gap Period pursuant to section 362(d) of the Bankruptcy Code with respect to all actions and proceedings in connection with or related to Abakan, Inc. and MesoCoat, Inc., pending before the United States District Court for the Southern District of New York, and any related matters pending before the United States Court of Appeals for the Second Circuit. If relief is ordered in this case after the January 13, 2016 evidentiary hearing, the automatic stay shall apply, or be reimposed, as the case may be.

As a result of the Court's foregoing determination(s), the Secured Judgement Creditors' Motion for Order (i) Dismissing Involuntary Petition Pursuant to Section 305 of the Bankruptcy Code, or, in the Alternative, (ii) for Stay Relief [ECF No. 22 in Case No. 15-29607-BKC-AJC; ECF No. 20 in Case No. 15-29606-BKC-AJC] as amended [ECF No. 27 in Case No. 15-29607-BKC-AJC; ECF No. 21 in Case No. 15-29606-BKC-AJC] and the (b) Receiver's Motion for Entry of An Order Clarifying or Declaring that the Automatic Stay does not Apply [ECF No. 23 in Case No. 15-29607-BKC-AJC; ECF No. 22 in Case No. 15-29606-BKC-AJC] are denied in part, as moot, without prejudice to the motions being renewed at or after the January 13, 2016 evidentiary hearing on the involuntary petitions.

IT IS SO ORDERED.

### 

Linda Leali, Esq. is directed to mail a copy of this Order to all interested parties immediately upon receipt of this Order and shall filed a certificate of service with the Clerk of the Court.

# EXHIBIT D



**ORDERED in the Southern District of Florida on December 14, 2015.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

In re:                                           Case No. 15-29606-BKC-AJC

ABAKAN, INC.,                                    Chapter 11

    Alleged Debtor.
_____/

In re:                                           Case No. 15-29607-BKC-AJC

MESOCOAT, INC.,                                  Chapter 11

    Alleged Debtor.
_____/

## ORDER (A) DENYING MOTIONS FOR STAY PENDING APPEAL AND (B) DISMISSING INVOLUNTARY PETITIONS, OR ALTERNATIVELY, ABSTAINING

    THIS CAUSE came before the Court for hearing on December 14, 2015 upon the

Motions to Stay Pending Appeal, Motions to Disqualify Counsel, and Motions for Protective

Order regarding discovery issues.  At the hearing, the Court heard the proffers and

representations of all interested parties and, upon consideration of the motions and responses

thereto, and being fully advised in the premises, denies the motions for stay and dismisses the

petitions, or alternatively abstains.  For the reasons stated more particularly on the record at the

hearings held December 9, 2015 and today, the Court believes the petitioning creditors are not

entitled to a stay pending appeal as they have not carried their burden of demonstrating

irreparable harm or success on the merits.

        Furthermore, the Court believes the petitioning creditors do not have the authority

necessary to file bankruptcy petitions on behalf of the Alleged Debtors.  The Alleged Debtors are

involved in litigation with former management in the United States District Court in New York,

before the Honorable Denise L. Cote.  Judge Cote has appointed a receiver in that case.  The

Court believes the receiver is the entity who possesses the authority required to file bankruptcy

petitions on behalf of the Alleged Debtors.  However, if dismissal of the involuntary petitions is

determined to be inappropriate, the Court alternatively believes abstention is warranted.  Section

305(a)(1) of the Bankruptcy Code specifically authorizes a court to dismiss a case or abstain if

"the interest of creditors and the debtor would be better served by such dismissal or

suspension...." The petitions in these involuntary cases reflect there is essentially a dispute with

former management, but the bankruptcy court should not be used by former management as an

alternate forum to the U.S. District Court when they do not favor the rulings of the District Court.

The Court believes the involuntary Chapter 11 petitions should be dismissed because the

interests of the creditors, *as a whole*, and the Alleged Debtors would be better served by such

dismissal.  The feuding parties may continue their District Court action before Judge Cote and

obtain appropriate relief without using the bankruptcy court as an additional weapon to resolve

their disputes.

        The petitioning creditors have another forum available to them in which they can

protect their interests and, in that pending U.S. District Court action, the petitioning creditors'

interests are protected by the court-appointed receiver, an independent fiduciary.  Bringing these

cases into bankruptcy court only adds an additional layer of expense to the resolution of the

dispute with former management.  This Court believes the New York District Court action

affords the petitioning creditors a suitable forum to resolve their dispute, and it would be

inefficient, uneconomical and inappropriate to administer these cases through this Court.

Accordingly, it is

ORDERED AND ADJUDGED that

1.    The Motions for Stay Pending Appeal are DENIED.

2.    The involuntary petitions commencing these cases are DISMISSED

forthwith.  Alternatively, the Court ABSTAINS, under 11 U.S.C.

305(a)(1), from administering these case.

3.    All other pending motions in both of these cases are DENIED as moot.

4.    The Court reserves jurisdiction of the parties for appropriate remedies

under 11 U.S.C. 303(i).

###

The Clerk of Court is directed to mail a copy of this Order to all creditors and interested parties
on the mailing matrix.



**ORDERED in the Southern District of Florida on December 14, 2015.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Case No. 15-29606-BKC-AJC |
| ABAKAN, INC., | Chapter 11 |
| Alleged Debtor. _____/ | |
| In re: | Case No. 15-29607-BKC-AJC |
| MESOCOAT, INC., | Chapter 11 |
| Alleged Debtor. _____/ | |

### ORDER (A) DENYING MOTIONS FOR STAY PENDING APPEAL AND (B) DISMISSING INVOLUNTARY PETITIONS, OR ALTERNATIVELY, ABSTAINING

THIS CAUSE came before the Court for hearing on December 14, 2015 upon the

Motions to Stay Pending Appeal, Motions to Disqualify Counsel, and Motions for Protective

Order regarding discovery issues.  At the hearing, the Court heard the proffers and

representations of all interested parties and, upon consideration of the motions and responses

thereto, and being fully advised in the premises, denies the motions for stay and dismisses the

petitions, or alternatively abstains. For the reasons stated more particularly on the record at the hearings held December 9, 2015 and today, the Court believes the petitioning creditors are not entitled to a stay pending appeal as they have not carried their burden of demonstrating irreparable harm or success on the merits.

Furthermore, the Court believes the petitioning creditors do not have the authority necessary to file bankruptcy petitions on behalf of the Alleged Debtors. The Alleged Debtors are involved in litigation with former management in the United States District Court in New York, before the Honorable Denise L. Cote. Judge Cote has appointed a receiver in that case. The Court believes the receiver is the entity who possesses the authority required to file bankruptcy petitions on behalf of the Alleged Debtors. However, if dismissal of the involuntary petitions is determined to be inappropriate, the Court alternatively believes abstention is warranted. Section 305(a)(1) of the Bankruptcy Code specifically authorizes a court to dismiss a case or abstain if "the interest of creditors and the debtor would be better served by such dismissal or suspension...." The petitions in these involuntary cases reflect there is essentially a dispute with former management, but the bankruptcy court should not be used by former management as an alternate forum to the U.S. District Court when they do not favor the rulings of the District Court. The Court believes the involuntary Chapter 11 petitions should be dismissed because the interests of the creditors, *as a whole*, and the Alleged Debtors would be better served by such dismissal. The feuding parties may continue their District Court action before Judge Cote and obtain appropriate relief without using the bankruptcy court as an additional weapon to resolve their disputes.

The petitioning creditors have another forum available to them in which they can protect their interests and, in that pending U.S. District Court action, the petitioning creditors'

interests are protected by the court-appointed receiver, an independent fiduciary.  Bringing these cases into bankruptcy court only adds an additional layer of expense to the resolution of the dispute with former management.  This Court believes the New York District Court action affords the petitioning creditors a suitable forum to resolve their dispute, and it would be inefficient, uneconomical and inappropriate to administer these cases through this Court.  Accordingly, it is

ORDERED AND ADJUDGED that

1.   The Motions for Stay Pending Appeal are DENIED.

2.   The involuntary petitions commencing these cases are DISMISSED forthwith.  Alternatively, the Court ABSTAINS, under 11 U.S.C. 305(a)(1), from administering these case.

3.   All other pending motions in both of these cases are DENIED as moot.

4.   The Court reserves jurisdiction of the parties for appropriate remedies under 11 U.S.C. 303(i).

### 

The Clerk of Court is directed to mail a copy of this Order to all creditors and interested parties on the mailing matrix.

# EXHIBIT E

Case 2:15-cv-02286-JAD-CWH   Document 11   Filed 12/29/15   Page 50 of 74

Case 1:15-cv-03435-DLC   Document 269   Filed 12/18/15   Page 1 of 2
Case 1:15-cv-03435-DLC   Document 268-3   Filed 12/17/15   Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/18/2015
```

GEORGE TOWN ASSOCIATES S.A.,

        Plaintiff,

v.

ABAKAN, INC. and MESOCOAT, INC.,

        Defendants.

Case No. 15-cv-3435 (DLC)

[PROPOSED] ORDER GRANTING
MOTION FOR TERMINATION OF
RECEIVERSHIPS UPON APPROVAL
OF SATISFACTION OF DEBT

        THIS MATTER having come before the Court on November 3, 2015, on Plaintiff George

Town Associates S.A.'s Motion for Termination of Receiverships upon Approval of Satisfaction

of Debt as subsequently modified (the "Motion") (Dkt. 215), pursuant to which the Court is

asked to (1) authorize Robert Seiden, the equity receiver (the "Receiver") appointed by this

Court for each of the Defendants,  to enter into a Satisfaction and Assignment Agreement

providing for the transfer of 77.5% of the equity of MesoCoat to George Town Associates S.A.,

Sonoro Invest S.A., Joe Eberhard and the Abakan Petitioning Creditors in exchange for the

release, satisfaction or assumption of certain secured and unsecured claims against MesoCoat

and Abakan exceeding the aggregate sum of $6.2 million, and (2) to terminate the receivership

over Defendants in this action and dismiss this case, and the Court having found that the notice

of the Motion given to the Defendants' secured creditors, unsecured creditors, shareholders, and

other interested parties was fair, sufficient, appropriate, and adequate under the circumstances,

and the Court having considered all objections to the Motion, and the Court having considered

the withdrawal of the objection filed by the Petitioning Creditors and their request for approval

of the Motion, and the Court having independently reviewed the fairness of the proposed

satisfaction and having requested certain changes which the parties incorporated, and the Court

Case 2:15-cv-02286-JAD-CWH   Document 11   Filed 12/29/15   Page 51 of 74
Case 1:15-cv-03435-DLC   Document 269   Filed 12/18/15   Page 2 of 2
Case 1:15-cv-03435-DLC   Document 268-3   Filed 12/17/15   Page 2 of 2

having determined that the proposed satisfaction is for fair value and is fair, equitable, and for

reasonably equivalent value to the creditors and shareholders of both MesoCoat and Abakan

under the circumstances, and the Court having determined that entering and consummating the

proposed satisfaction is within the authority of the Receiver, and the Court being advised in the

premises,

IT IS ORDERED that the Motion is granted.

IT IS FURTHER ORDERED that the Receiver is authorized to enter into and

consummate the Satisfaction and Assignment Agreement *presented to the Court on 12/18/15.*

IT IS FURTHER ORDERED that, unless the Court orders otherwise for cause shown, all

creditors, shareholders, and Defendants' respective boards of directors are enjoined from filing

any voluntary or involuntary bankruptcy petition for or against Abakan prior to ninety-one (91)

days following the consummation of the Satisfaction and Assignment Agreement.

IT IS FURTHER ORDERED that the receivership over Defendants pursuant to this

Court's Orders (Dkt. 98, 142), shall terminate upon expiration of ninety-one (91) days following

consummation of the Satisfaction and Assignment Agreement, within such time the Receiver

shall submit a final accounting.  Upon receipt of the final accounting, this case is dismissed

pursuant to Fed.R.Civ.P. 66.

SO ORDERED:

Dated:  New York, New York

*December 18, 2015*

_____
DENISE COTE
United States District Judge

2

# EXHIBIT F



In-house thermal spray coating
services using our long-life
PComP™ nanocomposite coatings.
**Submit a Request for Quote now!**

Home    About Us    Solutions    Applications    Quality & HSE    R & D    Testimonials    Media    Careers    Contact Us

# Press Releases

## Abakan Increases Direct Ownership in MesoCoat to 87.5% through Conversion of Investment and Partial Exchange of Powdermet Interest

June 02, 2014

MIAMI (GLOBE NEWS WIRE) – Abakan Inc. (OTCQB: ABKI) ("Abakan") an emerging leader in the advanced coatings and metal formulations markets, today announced that it has increased its ownership position in its majority owned subsidiary, MesoCoat Inc. ("MesoCoat"), to a 87.5% direct and 89.9% direct and indirect ownership. The increase is the result of: a) Abakan converting an additional $6,200,000 that it has invested in MesoCoat to equity; b) Abakan exchanging 21.0% of its 40.5% ownership in Powdermet for 65.3% of Powdermet's shares of MesoCoat; and c) by issuing 2,000,000 restricted shares of Abakan to Powdermet. Abakan intends to acquire those remaining shares of MesoCoat held by Powdermet in exchange for those remaining shares of Powdermet which it holds and the issuance of additional shares of Abakan, to the extent necessary, on receipt of independent business valuations of MesoCoat and Powdermet on or before August 31, 2014.

The price per share of the latest conversion of Abakan's investment in MesoCoat is at a 58% premium to the last price that Abakan converted invested capital to equity.

Abakan's commitment to providing lowest total cost of ownership, long life wear and corrosion solutions, led by its CermaClad™ and PComP™ product platforms, is clearly demonstrated by its decision to focus on near term commercial applications ahead of diverse contract R&D activities.

Mr. Robert Miller, Abakan's CEO, announced that Abakan director, Stephen Goss, will replace Andrew Sherman as CEO of MesoCoat effective immediately. Mr. Goss brings operational discipline and commercial focus, in a shift away from the technology development focus to commercial expansion, which transition will continue to be supported by Mr. Sherman.

Mr. Goss stated "Getting our important products to market is the focus of our immediate efforts at MesoCoat. Our products are necessary to meet the ever expanding demand for downtime reducing cladding and coating materials in connection with corrosion and wear protection for oil and gas activities, mining concerns, metal processing, and eventually infrastructure applications. With our renewed focus on manufacturing scale-up, cost reduction, and quality control, we believe that our disruptive CermaClad™ products will be ready for market in the near term, joining our PComP™ product family that has been accepted in the market and where demand currently outstrips our ability to supply. Our decision to focus on MesoCoat in connection with today's announcement will strengthen our overall operations,, which when combined with our world-leading technology should deliver significant results."

This decision to divest our ownership of Powdermet, as disclosed in a February 10, 2014, 8K disclosure, was mutually agreed upon by the Boards of Abakan, MesoCoat and Powdermet, and is an acceleration of the staged acquisition planned on Abakan's initial investment in 2009. The significant downturn in Powdermet's traditional aerospace and defense contracting business, and the need to reinvigorate Powdermet's technology platforms, in order to diversify its client base into new industries in the post-government-sequestration environment caused all parties to rethink their respective timelines. A mutual agreement was reached that Mr. Sherman, the founder, CEO, and technology leader of both MesoCoat and Powdermet was no longer in a position to dedicate the time and effort needed to effectively manage both the commercial deployment of MesoCoat's technologies and Powdermet's transition. Mr. Sherman will remain in a technical role, while Mr. Goss will provide the focus and disciplined management needed for near term profitability and commercial success.

Mr. Sherman stated "I am very excited about MesoCoat's transition to becoming a major commercial provider, which is the realization of my long term vision "to bring the benefits of advanced materials to the world". I fully

## Media

News

Press Releases

NanoMatters Newsletter

Videos

Presentations

Brochures

Resources

Awards

## Latest News

July 15, 2015
**Press Release**
Abakan Secures Test Orders from Major Industry Leaders... more »

More News »
More Press Releases »

## Media

Join our Mailing List »

Download CermaClad™ Brochure »

Download PComP™ Brochure »

       Share

support Mr. Goss and believe he is exactly what the organization needs at this time. We have an exceptional team, and I look forward to the continued advancement and expansion of MesoCoat's revolutionary nanocomposites and large area cladding product portfolios for years to come."

**About Abakan Inc.**

Abakan develops, manufactures, and markets advanced nanocomposite materials, innovative fabricated metal products and highly engineered metal composites for applications in the oil and gas, petrochemical, mining, aerospace and defense, energy, infrastructure and processing industries. Abakan's technology portfolio currently includes high-speed, large-area metal cladding technology; long-life nanocomposite anti-corrosion and wear coating materials. Abakan's products have demonstrated longer life, higher productivity and extremely high strength-to-weight ratios compared to competing technologies. The Abakan group of companies has been honored by The Wall Street Journal as the #1 Manufacturing Innovation across the globe, by Pipeline Industries Guild as the Top Subsea Pipeline Technology, by Forbes as the #1 Most Promising Material Science Company in the United States, by American Metals Market with the Steel Excellence Award, by Inc. 500 as one of the Fastest Growing Manufacturing Company in the U.S., and has received numerous other trade, industry and technology awards including five R&D 100 Awards and a Technology Innovation Award from the National Institute of Standards and Technology. Over $50 million has been invested in product development and testing by federal agencies, national labs and our companies in order to deliver products that offer improved performance over the current state of art. Abakan has successfully introduced its metal coatings for metal asset protection and life extension in the oil and gas and mining industries, and is currently focusing on the scale-up and commercialization of its highly disruptive metal cladding products for the oil and gas, oil sands, and mining industries. Abakan currently operates from multiple locations in United States, and intends to expand global operations in North America, Asia and South America.

**Forward-Looking Statements**

*A number of statements contained in this press release are forward-looking statements. These forward looking statements involve a number of risks and uncertainties including technological obsolescence, market acceptance of future products, competitive market conditions, and the sufficiency of capital resources. The actual results Abakan may achieve could differ materially from any forward-looking statements due to such risks and uncertainties. Abakan encourages the public to read the information provided here in conjunction with its most recent filings on Form 10-K,Form 10-Q and 8-K. Abakan's public filings may be viewed at www.sec.gov.*

**Abakan Inc.**
Robert Miller, Chief Executive Officer
Phone: 786-206-5368
Email: robert.miller@abakaninc.com
www.abakaninc.com

**Investor Relations**
Surety Financial Group, LLC
Phone: 410-833-0078
www.suretyfingroup.com

---

Home | Abouts Us | Cladding | Coating         **MesoCoat Inc.**
Applications | Quality & HSE | Media | Careers   24112 Rockwell Drive, Euclid, OH, 44117-1252
Contact Us | Privacy | © 2013 MesoCoat Inc.     Phone: 216.453.0866 - info@mesocoat.com



# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



GEORGE TOWN ASSOCIATES S.A.,

                     Plaintiff,

v.

ABAKAN, INC. and MESOCOAT, INC.,

                     Defendants.

Case No. 15-CV-3435 (DLC) (JLC)

## TEMPORARY RESTRAINING ORDER AND APPOINTMENT OF RECEIVER

Plaintiff, George Town Associates S.A. ("George Town") has filed a Complaint seeking damages and equitable relief ("Complaint"), and has moved, pursuant to Rules 65 and 66 of the Federal Rules of Civil Procedure, for a Temporary Restraining Order, Preliminary Injunction, and Appointment of Receiver ("George Town's Motion"), against Defendants, Abakan, Inc. ("Abakan") and MesoCoat, Inc. ("MesoCoat") (collectively, "Defendants").

### Findings

The Court has considered the pleadings, declarations, exhibits, and memorandum filed in support of George Town's Motion, Defendants' responses thereto, conducted an evidentiary hearing on the matter, and finds that:

1.     This Court has jurisdiction over the subject matter of this case and all parties thereto;

2.     There is good cause to believe that absent the relief requested herein, George Town will suffer irreparable injury;

3.      There is good cause to believe Abakan defaulted the secured promissory note at issue in this action, and that George Town is therefore likely to prevail on the merits of this action, and weighing the equities and considering George Town's likelihood of ultimate success favors George Town's requested relief;

4.      It is in the public interest that the Court enter a Temporary Restraining Order;

5.      Therefore, the Court hereby restrains Defendants from performing any of the following actions outside its ordinary business without George Town's consent, which will not be unreasonably withheld, *— delayed or conditioned,* as set forth in the secured promissory note between George Town and Abakan, which MesoCoat guaranteed:

a) Paying, declaring, or setting apart for such payment, any dividend or other distribution (whether in cash, property or other securities) on shares of capital stock other than dividends on shares solely in the form of additional shares; or, directly or indirectly or through any subsidiary, making any other payment or distribution in respect of its capital stock except for distributions pursuant to any shareholders' rights plan which is approved by a majority of disinterested directors;

b) Repurchasing or otherwise acquiring (whether for cash or in exchange for property or other securities or otherwise) in any one transaction or series of related transactions any shares of Defendants' capital stock or any warrants, rights or options to purchase or acquire any such shares;

c) Incurring any indebtedness, or otherwise assuming, guaranteeing, endorsing, contingently agreeing to purchase or otherwise becoming liable for the indebtedness of any other person, firm, partnership, joint venture or corporation, or grant or suffer to exist any lien on its assets, except only with respect to indebtedness expressly referenced in the Note, indebtedness to trade creditors or financial institutions incurred in the ordinary course of business and consistent with past practice, or borrowings for which the proceeds shall be used to repay George Town's Note;

d) Issuing any equity securities of Defendants, or any securities that are convertible, exercisable or exchangeable into equity securities of Defendants, except shares of common stock that are issuable (a) under any employee equity incentive plans in effect prior to the date of the Note, or (b) upon the exercise or conversion of securities that were outstanding prior to the date of the Note, provided that in each such case, issuances are made in accordance with the terms of the underlying plan or securities documents as in effect prior to the date of

2

the Note and not pursuant to terms that have been amended after the date of this Note;

   e) Selling, leasing or otherwise disposing of any significant portion of assets outside the ordinary course of business; and

   f) Lending any additional money, giving any additional credit, or making any additional advances to any person, firm, joint venture or corporation, including, without limitation, Defendants' officers, directors, employees, subsidiaries and affiliates.

   6.      No security or bond is required of George Town for issuance of a restraining order.

   7.      For the same reasons, good cause exists for appointment of a receiver over MesoCoat with the following powers, as set forth in the security agreement between the parties:

   a) Holding cash and payment obligations in trust for George Town;

   b) Taking possession of the collateral and, for that purpose, entering, with the aid and assistance of any person, any premises where the collateral is or may be placed and remove the same;

   c) Exercising discretion in all voting and consensual rights of MesoCoat, receiving cash dividends, interest, and other payments on the collateral, and exercising all rights with respect to the collateral as if it were the sole and absolute owner thereof;

   d) Operating MesoCoat's business using the collateral and to assign, sell, lease, or otherwise dispose of all or any part of the collateral, without demand upon or notice to MesoCoat;

   e) Notifying MesoCoat's account debtors and obligors to make payments directly to George Town, and enforcing MesoCoat's rights against such account debtors and obligors;

   f) Directing any financial intermediary or any other entity holding any investment property to transfer the same to George Town;

   g) Transferring all intellectual property registered in MesoCoat's name with the U.S. Patent and Trademark Office (or the U.S. Copyright Office) into George Town's name;

   h) Disposing of the collateral; and

   i) Using, licensing, or sublicensing any intellectual property owned by MesoCoat.

3

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained from violating any of the restrictions provided herein.

**IT IS FURTHER ORDERED** that Robert W. Seiden is appointed as receiver of MesoCoat with all powers as provided herein, pending the resolution of this matter.

**SO ORDERED**, this _____ day of _____, 2015.

_____
UNITED STATES DISTRICT JUDGE

Nothing in this Order shall prevent the defendants from taking steps on notice to plaintiff that are reasonably necessary to achieve complete repayment of the plaintiff.

Denise Cote
May 6, 2015
4:30 p.m.

4

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                       :      15cv3435 (DLC)
GEORGE TOWN ASSOCIATES S.A.,           :
                                       :
               Plaintiff,              :      ORDER
                                       :
          -v-                          :
                                       :
ABAKAN, INC. and MESOCOAT, INC.,       :
                                       :
               Defendants.             :
                                       :
------------------------------------- X

DENISE COTE, District Judge:

    Plaintiff George Town Associates S.A. ("George Town") filed

a complaint on May 4, 2015, seeking damages and equitable relief.

On June 18, the plaintiff moved for summary judgment and to

dismiss the defendants' counterclaim.  On July 28, the plaintiff

moved for an order finding Abakan, Inc. ("Abakan") and MesoCoat,

Inc. ("MesoCoat") in contempt and for the appointment of receiver

over MesoCoat.  Following a hearing on August 14, 2015, Robert

Seiden was appointed as Receiver over MesoCoat.  Earlier today,

the plaintiff's June 18 motion for summary judgment was granted.

    The Court has considered the pleadings, declarations,

exhibits, and memoranda filed by the parties and the record at

the evidentiary hearing held on August 14, as well as the

parties' August 17 submissions addressed to the terms of the

receivership, and finds that:

    1.  This Court has jurisdiction over the subject matter of

this case and all parties thereto;

    2.    There is good cause to believe that absent the relief requested herein, George Town will suffer irreparable injury;

    3.    Abakan defaulted on the secured promissory note at issue in this action and summary judgment was entered in George Town's favor on August 18, 2015.  Weighing the equities, considering George Town's success on the merits, and for the reasons stated on the record on August 14;

    4.    Good cause exists for appointment of Robert Seiden as Receiver over MesoCoat with the following powers:

    a) Holding cash and payment obligations in trust for George Town;

    b) Taking possession of the collateral and, for that purpose, entering, with the aid and assistance of any person, any premises where the collateral is or may be placed and remove the same;

    c) Exercising discretion in all voting and consensual rights of MesoCoat, receiving cash dividends, interest, and other payments on the collateral, and exercising all rights with respect to the collateral as if it were the sole and absolute owner thereof;

    d) Operating MesoCoat's business using the collateral and to assign, sell, lease, or otherwise dispose of all or any part of the collateral, without demand upon or notice to MesoCoat;

    e) Notifying MesoCoat's account debtors and obligors to make payments directly to George Town, and enforcing MesoCoat's rights against such account debtors and obligors;

    f) Directing any financial intermediary or any other entity holding any investment property to transfer the

same to George Town;

g) Transferring all intellectual property registered in MesoCoat's name with the U.S. Patent and Trademark Office (or the U.S. Copyright Office) into George Town's name;

h) Disposing of the collateral; and

i) Using, licensing, or sublicensing any intellectual property owned by MesoCoat.

IT IS FURTHER ORDERED that any and all actions taken by the Receiver pursuant to this Order shall be effectuated in a manner which is consistent with federal and state laws as are applicable to a receiver.  The Receiver's liability, if any, shall be consistent with his role as a fiduciary.

IT IS FURTHER ORDERED that the Receiver shall provide statements of account not less than every 30 days to the parties in this action.

IT IS FURTHER ORDERED that, prior to either assigning, disposing of, transferring, or hypothecating any collateral belonging to MesoCoat with a value of in excess of $50,000.00, the Receiver shall first give 7 days prior notice to the parties in this action.

SO ORDERED:

Dated:    New York, New York
          August 18, 2015

_____
DENISE COTE
United States District Judge

3

# EXHIBIT I

September 16, 2015

**<u>VIA EMAIL</u>**

Board of Directors
Abakan, Inc.
2665 S. Bayshore Drive, Suite 450
Miami, FL 33133

Dear Abakan Board:

I resign from the Board of Directors (the "Board") effective immediately. While I am certainly resigning for "good reason", since I am not providing 60 days notice I hereby waive any claim on unexercised stock options as well as several thousands of dollars in unpaid travel expenses.

I have struggled to perform my responsibilities as a director these past six months due to the unrelenting harassment from Robert Miller, the Abakan CEO ("Miller"). I have witnessed the dramatic destruction of shareholder and enterprise value by Miller. Once again I urge the Board to remove Miller immediately to salvage any remaining enterprise value.

You have all witnessed the Miller incompetence and harassment culminating yesterday in the release of the 10K with inadequate disclosures and in violation of internal control policies. I informed the Board several times that, as Head of the Audit Committee, I needed to be included during the audit review process. I also shared these concerns with Abakan's new auditor, Allen Waddle of Maloney & Novotny (the "Auditor"). Instead, I received an email 33 minutes ahead of a Board meeting yesterday to approve the 10K, with a draft attached (to clarify I had never been shown a draft 10K or any other supporting or interim documents or work product despite repeated requests). Since I was in a meeting, I did not receive this email until after 11:30AM, I was unable to participate in the call but still quickly glanced at the document and notified the Board and Auditor of (a) inadequate disclosures contained in the 10K and (b) that the Audit Committee had no time to perform an adequate review. I have attached the Abakan Audit Committee Charter that was flagrantly ignored by the Board and outside Auditors.

I refer each of you to Section 9 of the Abakan By Laws (I have attached this document for your review – please also note the requirements on Annual Meetings which I believe this Board views as a mere suggestion rather than a requirement since no meeting has been held since I have been a Director), calling for 24 hours notice before a Board Meeting. Let's review the advance notice I have received on the past four Board Meetings:

| Meeting Scheduled | Notice Sent | Notice Provided |
|---|---|---|
| 9/15/15, 11:30AM | 9/15/15, 10:57AM | 33 minutes |
| 8/10/15, 9AM | 8/9/15, 5:05PM | 16 hours (overnight) |
| 7/22/15, 5PM | 7/22/15, 9:53AM | 7 hours |
| 7/7/15, 9AM | 7/6/15, 9:56PM | 11 hours (overnight) |

In addition to receiving deficient notice of Board meetings, I was not provided with appropriate underlying materials to review. In fact, on the July 7th Board call, Miller told me to "get a lawyer" if I wanted him to turn over copies of the new convertible debt documents that he had negotiated. Perhaps because the terms were so outrageous, he did not want them to see the light of day (Footnote 18 to the 10K filed yesterday discloses interest rates "up to 44%" and conversion at "between 60% to 100% of the lowest trading price for 20 prior trading days".

It was only after the July 7th Board meeting (approving the Abakan-Powdermet exchange) that Andrew Sherman sent me the valuation for Powdermet. The Board was asked to vote on this complex transaction involving a Company insider without the benefit of this key document or a Fairness Opinion.

On June 25th Sonoro Invest S.A. ("Sonoro") sent the Board a detailed letter demanding the Board take action to remedy breaches of fiduciary duties and violations of law by Abakan officers and directors. On July 22nd Ryan Owen was appointed the head of an independent committee to investigate these allegations (even though Mr. Owen is a paid consultant to Abakan) and an attorney was hired. Shortly thereafter the attorney resigned for non-payment.

I encourage you all to re-read the Abakan Code of Business Conduct & Ethics that I have attached. I attended all Board meetings overlapping 2.5 years of Jeff Webb's directorship and never heard his voice nor saw his face. He was indicted in May 2015 by the DOJ in the FIFA scandal. Costas Takkas (whom Miller represented to be his "best friend") served as the Company CFO from February 7, 2014 through May 29, 2015. He is also under indictment by the DOJ in the FIFA scandal. With an indicted CFO having served during fiscal year 2015, the Company still refused to allow the Audit Committee to perform its job.

Regrettably,

Raymond Tellini

# EXHIBIT J

BOD Resolution # 121

### UNANIMOUS CONSENT IN LIEU OF A SPECIAL
### MEETING OF DIRECTORS OF
### ABAKAN, INC.

The undersigned, being all of the directors of Abakan, Inc., a corporation of the State of Nevada, (the "Corporation"), do hereby authorize and approve the actions set forth in the following resolutions without the formally of convening a meeting, and do hereby consent to the following actions of this Corporation, which actions are hereby deemed affective as of the date hereof:

**RESOLVED:** That the officers of this corporation are authorized and directed to issue a $79,000.00 promissory note to Vis Vires Group Inc., which provides conversion features equal to 60% of the average of the lowest five Trading Prices for the Common Stock during the ten Trading Day period ending on the latest complete Trading Day prior to the Conversion Date, which would not be before 180 days. Prior to the end of 180 days, Abakan can pay the principal and interest to avoid conversion of the note, and the maximum interest prior to 180 days would be 35%.

**RESOLVED FURTHER:** That the officers of this corporation are authorized to corporation and directed to execute transfer agent instructions with the Company's transfer agent to irrevocably reserve three million eight hundred fifty thousand (3,850,000) shares of the Company's Common Stock with the transfer agent for the benefit of Vis Vires Group Inc. for conversion of the above aforementioned note; and

**RESOLVED FURTHER,** that each of the officers of the Corporation be, and they hereby are authorized and empowered to execute and deliver such documents, instruments and papers and to take any and all other action as they or any of them may deem necessary or appropriate of the purpose of carrying out the intent of the foregoing resolutions and the transactions contemplated thereby; and that the authority of such officers to execute and deliver any such documents, instruments and papers and to take any such other action shall be conclusively evidenced by their execution and delivery thereof or their taking thereof.

The undersigned, by affixing their signatures hereto, do hereby consent to, authorize and approve the foregoing actions in their capacity as a majority of the directors of Abakan, Inc.

Dated: Aug 4, 2015

_____          _____
Robert Miller                                  Stephen Goss


_____          _____
Andrew Sherman                             Ryan Owen


_____          _____
Kevin Chen                                     Raymond Tellini

# EXHIBIT K

SC 13G 1 v426401_sc13g.htm SC 13G

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**

**SCHEDULE 13G**

**Under the Securities Exchange Act of 1934**

**(AMENDMENT NO. ___)\***

**ABAKAN INC.**
(Name of issuer)

**Common Stock, $0.0001 value per share**
(Title of class of securities)

**00258J107**
(CUSIP number)

**December 7, 2015**
(Date of Event Which Requires Filing of this Statement)

Check the appropriate box to designate the rule pursuant to which this Schedule is filed:

o    Rule 13d-1(b)

x    Rule 13d-1(c)

o    Rule 13d-1(d)

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required in the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1745 (1-06)

Page 1 of 5 pages

---

CUSIP No. 00258J107            13G            Page 2 of 5 Pages

---

1. Name of Reporting Person
   I.R.S. Identification Nos. of above persons (entities only).

   VIS VIRES GROUP, INC.
   EIN: 472303658

---

2. Check the Appropriate Box if a Member of a Group (See Instructions)

   (a) o
   (b) o

---

3. SEC Use Only

---

4. Citizenship or Place of Organization

   Nevada

---

| Number of Shares Beneficially Owned by Each Reporting Person With: | 5. Sole Voting Power |
| | 7,942,158* |
| | 6. Shared Voting Power |
| | |
| | 7. Sole Dispositive Power |
| | 7,942,158* |
| | 8. Shared Dispositive Power |
| | |

---

9. Aggregate Amount Beneficially Owned by Each Reporting Person

   7,942,158*

---

10. Check if the Aggregate Amount in Row (9) Excludes Certain Shares (See Instructions)

---

11. Percent of Class Represented by Amount in Row (9)

    9.99% (based on the total of 79,501,088 outstanding shares of Common Stock)

---

12. Type of Reporting Person (See Instructions)

    CO

---

*Consists of Common Stock that the reporting person has the right to acquire by way of conversion of a security.

---

CUSIP No. 00258J107                              13G                             Page 3 of 5 Pages

**Item 1**     (a)    **Name of Issuer:**
                       ABAKAN INC., a Nevada corporation

                (b)    **Address Of Issuer's Principal Executive Offices:**
                       Robert W Seiden, Receiver over Abakan, Inc.:  1120 Avenue of the Americas, 4th Floor, NewYork, New York, 10036

**Item 2**     (a)    **Name of Person Filing:**
                       VIS VIRES GROUP, INC.

                (b)    **Address of Principal Business Office, or, if none, Residence:**
                       111 Great Neck Road, Suite 216, Great Neck, NY 11021

                (c)    **Citizenship:**
                       New York

                (d)    **Title of Class of Securities:**
                       Common Stock, $0.0001 value per share

                (e)    **Cusip Number:**
                       00258J107

**Item 3**     **If this statement is filed pursuant to §240.13d-1(b) or 240.13d-2(b) or (c), check whether the person filing is a:**

                (a)    ¨      Broker or dealer registered under section 15 of the Act (15 U.S.C. 78o).
                (b)    ¨      Bank as defined in section 3(a)(6) of the Act (15 U.S.C. 78c).
                (c)    ¨      Insurance company as defined in section 3(a)(19) of the Act (15 U.S.C. 78c).
                (d)    ¨      Investment company registered under section 8 of the Investment Company Act (15 U.S.C. 80a-8).
                (e)    ¨      An investment adviser in accordance with §240.13d-1(b)(1)(ii)(E).
                (f)    ¨      An employee benefit plan or endowment fund in accordance with §240.13d-1(b)(ii)(F).
                (g)    ¨      A parent holding company or control person in accordance with §240.13d-1(b)(1)(ii)(G).
                (h)    ¨      A savings association as defined in Section 3(b) of the Federal Deposit Insurance Act (12 U.S.C. 1813).
                (i)    ¨      A church plan that is excluded from the definition of an investment company under section 3(c)(14) of the Investment Company Act of 1940 (15 U.S.C. 80a-3);
                (j)    ¨      Group in accordance with §240.13d-1(b)(ii)(J).

CUSIP No.  00258J107         13G         Page 4 of 5 Pages

**Item 4**     **Ownership**

     (a)    Amount beneficially owned 7,942,158*

     (b)    Percent of class:  9.99%

     (c)    Number of shares as to which the person has:

         (i)    Sole power to vote or to direct the vote

            7,942,158*

         (ii)    Shared power to vote or to direct the vote

         (iii)    Sole power to dispose or to direct the disposition of

            7,942,158*

         (iv)    Shared power to dispose or to direct the disposition of

*Consists of Common Stock that the reporting person has the right to acquire by way of conversion of a security.

**Item 5**     **Ownership of Five Percent or Less of a Class**

     If this statement is being filed to report the fact that as of the date hereof the reporting person has ceased to be the beneficial owner of more than five percent of the class of securities, check the following ¨.

**Item 6**     **Ownership of More Than Five Percent on Behalf Of Another Person**

**Item 7**     **Identification and Classification of the Subsidiary Which Acquired the Security Being Reported on By the Parent Holding Company**

**Item 8**     **Identification and Classification of Members of The Group**

**Item 9**     **Notice of Dissolution of Group**

**Item 10**     **Certification**

     (a)    The following certification shall be included if the statement is filed pursuant to §240.13d-1(b):

        By signing below I certify that, to the best of my knowledge and belief, the securities referred to above were acquired and are held in the ordinary course of business and were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect.

     (b)    The following certification shall be included if the statement is filed pursuant to §240.13d-1(c):

        By signing below I certify that, to the best of my knowledge and belief, the securities referred to above were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect.

CUSIP No. 00258J107                                    13G                                    Page 5 of 5 Pages

## SIGNATURE

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

December 7, 2015
_____
Date

/s/ Curt Kramer
_____
Signature

**Curt Kramer, President**
_____
Name/Title

The original statement shall be signed by each person on whose behalf the statement is filed or his authorized representative. If the statement is signed on behalf of a person by his authorized representative other than an executive officer or general partner of the filing person, evidence of the representative's authority to sign on behalf of such person shall be filed with the statement, provided, however, that a power of attorney for this purpose which is already on file with the Commission may be incorporated by reference. The name and any title of each person who signs the statement shall be typed or printed beneath his signature.

*NOTE*: Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. *See* §240.13d-7 for other parties for whom copies are to be sent.

**Attention: Intentional misstatements or omissions of fact constitute Federal criminal violations (See 18 U.S.C. 1001)**