UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Sonoro Invest S.A., <br><br> Plaintiff <br><br> v. <br><br> Robert Miller, et al., <br><br> Defendants | 2:15-cv-02286-JAD-CWH <br><br> **Order Denying Motion to Transfer Venue and Motions to Dismiss** <br><br> [ECF Nos. 64, 73, 109, 119] |

In this shareholder derivative suit on behalf of Nevada corporation Abakan, Inc., Sonoro Invest S.A. sues four of Abakan's former board members and officers for fiduciary breaches and related claims. Three of these defendants—Costas Takkas, Stephen Goss, and Robert Miller—claim that this court lacks personal jurisdiction over them, and they move to dismiss this suit. The fourth defendant, Andrew Sherman, moves to transfer the litigation to Ohio, where he lives. Because Sherman has demonstrated no reason to transfer this case to Ohio, and I find that the exercise of personal jurisdiction over these officers and directors of a Nevada corporation is constitutionally reasonable, I deny the motions.[1]

## Background[2]

Sonoro is a Panamanian corporation that owns shares in Abakan, a Nevada corporation with its principal place of business in Florida.[3] Defendant Robert Miller is the former CEO of Abakan and a former member of Abakan's board of directors.[4] Defendant Andrew Sherman is also a former

---

[1] I find these matters suitable for disposition without oral argument. L.R. 78-1.

[2] These facts are taken from Sonoro's amended complaint and should not be construed as findings of fact.

[3] ECF No. 11 at ¶¶ 5–6.

[4] *Id.* at ¶ 7.

member of Abakan's Board.[5] Defendant Costas Takkas served as CFO of Abakan and on Abakan's Board.[6] And defendant Stephen Goss is the former COO of Abakan and also served as a director.[7] Miller, Sherman, and Goss were also directors or officers in one or both of Abakan's Ohio-based subsidiaries, MesoCoat and Powdermet. None of the individual defendants resides in Nevada. Sonoro alleges that it made a formal demand on Abakan's board in June 2015, which was refused.[8]

Sonoro alleges that the individual defendants breached their fiduciary duties, were unjustly enriched, and grossly mismanaged the company by "upstreaming value to related entities without adequate compensation to Abakan."[9] First, Sonoro alleges that the individual defendants failed to ensure that Abakan received adequate value for an additional investment it made in MesoCoat and Powdermet in May 2014.[10] As a result, Abakan paid an extremely high premium for the additional shares. Sonoro next alleges that the defendants purposefully failed to pay Abakan's debts by diverting available funds to advance their own personal interests, resulting in defaults and enforcement actions in New York and Florida.[11]

Sonoro also theorizes that the individual defendants "used their positions of control" to authorize unfavorable related-party leasing agreements on behalf of MesoCoat and Powdermet with Sherman Properties, LLP—a company incorporated by defendant Sherman in which he has an economic interest—for research and development space in Euclid, Ohio.[12] Sonoro claims that these

---

[5] *Id.* at ¶ 8.

[6] *Id.* at ¶ 9.

[7] *Id.* at ¶ 10.

[8] *Id.* at ¶ 16.

[9] *Id.* at ¶ 1.

[10] *Id.* at ¶¶ 31–38.

[11] *Id.* at ¶¶ 39–51.

[12] *Id.* at ¶ 52.

leases benefitted the individual defendants at Abakan's expense.[13] Additionally, Sonoro alleges that, even after the June 2015 demand, the individual defendants continued to breach their fiduciary duties by engaging in "death spiral financing"—digging the company deeper into debt and further diluting the value of its shares.[14]

Sonoro filed this shareholder-derivative action in December 2015, asserting three claims for relief: breach of fiduciary duties, unjust enrichment, and gross mismanagement. Defendants Goss, Takkas, and Miller separately move to dismiss this case for lack of personal jurisdiction.[15] Almost four months after the dismissal motions were fully briefed, defendant Sherman filed a motion to transfer venue to the United States District Court for the Northern District of Ohio.[16] I first address the motion to transfer venue.

**Discussion**

I. **Motion to transfer venue [ECF No. 119]**

Sherman moves to transfer this case to the Northern District of Ohio, where he resides and where he claims "nearly all aspects of the litigation have substantial contacts."[17] He claims that MesoCoat and Powdermet "operate exclusively from a world class nanomaterials research and manufacturing center in Euclid Ohio," which is located within the district.[18] This is the facility at the center of Sonoro's claims stemming from the MesoCoat and Powdermet related-party lease agreements with Sherman's company, Sherman Properties, LLP.[19] Additionally, Sherman represents that Miller, Takkas, and Goss regularly traveled to Euclid, Ohio, in their roles as MesoCoat and

---

[13] *Id.*

[14] *Id.* at ¶¶ 56–65.

[15] ECF Nos. 64, 73, 109. Takkas also argues that dismissal is proper for failure to state a claim.

[16] ECF No. 119.

[17] *Id.* at 5.

[18] *Id.*

[19] *Id.*

Abakan directors and officers—conduct that forms the basis of Sonoro's claims.[20]  Because each of the defendants is subject to personal jurisdiction in the Northern District of Ohio, most of the key witnesses reside there, and the interests of convenience and justice support the transfer, Sherman argues I should transfer the case there.

Sonoro, Takkas, and Miller oppose Sherman's request.[21]  They argue that this case could not have been brought in the Northern District of Ohio because Sherman fails to establish that personal jurisdiction over each defendant exists in Ohio or that venue is proper there.[22]  Additionally, they argue that the public and private-interest factors weigh against transfer,[23] and that transfer would offend judicial economy because Sherman waited to file the instant motion until more than nine months after he answered the amended complaint and well after the three pending motions to dismiss were fully briefed.[24]

### A.    Legal standards for venue transfers

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other division where it might have been brought."[25]  The purpose of 28 U.S.C. § 1404(a) is to "prevent the waste of time, energy, and money to protect litigants, witnesses[,] and the public against unnecessary inconvenience and expense."[26]  Motions to transfer lie within the district court's discretion and require an "individualized, case-by-case consideration of

---

[20] *Id.*

[21] Miller joined Sonoro's opposition.  ECF No. 124.

[22] ECF No. 120 at 8–13.

[23] *Id.* at 13–22.

[24] *Id.* at 22–23.

[25] 28 U.S.C. § 1404(a).

[26] *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation and quotation marks omitted).

convenience and fairness."[27]  The relevant factors thus depend on the facts of each particular case.[28]  "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."[29]

    **B.**    **Sherman fails to show that transfer serves the convenience of the parties and witnesses and the interest of justice**.

Even assuming that this case could have been brought in the Northern District of Ohio, Sherman fails to show that the requested transfer would better convenience the parties and witnesses and serve the interest of justice.  At the outset, I note that a plaintiff's choice of forum generally receives deference.[30]  Nevada was Sonoro's first choice of forum, and there is no indication of forum shopping.[31]  Though Sonoro itself is not a resident of Nevada, the real party in interest in this action is Abakan—a Nevada corporation.  Thus, the plaintiff's choice of forum is entitled to substantial weight, and Sherman must make a strong showing of inconvenience to override that choice.

                  *1.*    *Convenience of the parties and witnesses*

As a factor, the parties' contacts with the forums are neutral.  Sherman is the only defendant who resides in Ohio.  Abakan is incorporated in Nevada, but its principal place of business is in Florida.  Sonoro is a Panamanian corporation, and none of the other individual defendants resides in Nevada or Ohio.  Sonoro, Takkas, and Miller all oppose transfer.  Though Sherman claims that the

---

[27] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

[28] *Compare Jones*, 211 F.3d at 498 (setting forth non-exhaustive list of private and public-interest factors) *with Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (setting forth relevant considerations in breach-of-contract action); *see also Williams v. Bowman*, 157 F. Supp. 2d 1103,1106 (N.D. Cal. 2001); *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013) (both identifying relevant considerations on the facts of the particular case).

[29] *Decker Coal Co.,* 805 F.2d at 843.

[30] *See id.* at 842.

[31] ECF No. 11 at ¶ 4.

individual defendants regularly traveled to Ohio to conduct Abakan business,[32] Takkas avers that he never traveled to Ohio to conduct any of the Abakan business at issue in this case and that transferring this case to Ohio would severely inconvenience him.[33]

    The parties' contacts with Ohio relating to Sonoro's claims are also a neutral factor in this analysis. The events and agreements at issue in this case took place—or were negotiated and executed—at least as much outside the Northern District of Ohio as within that district. For example, though the facility at the center of the alleged self-dealing lease agreement is located in Euclid, Ohio, Sherman concedes that two of the complained-of transactions were directed by "Miller and/or Goss" from either Florida or South Carolina—not Ohio.[34] And the default actions against Abakan on which some of Sonoro's claims are based occurred in Florida and New York. Thus, there is no indication that the defendants in this case could any more reasonably have foreseen being haled into court in Ohio than in Nevada, where Abakan is incorporated.

    I am also unconvinced that this case would be substantially more expensive to litigate in Nevada than Ohio or substantially more inconvenient for the witnesses. Sherman cites no evidence to support his claim that litigation in Nevada is more costly than in Ohio,[35] nor does he cite to any evidence for his assertion that a majority of the witnesses in this case reside in Ohio.[36] In his affidavit, Takkas states that "[n]o witnesses that will or may testify on my behalf reside in Ohio, and most documentary evidence related to me is located in Florida."[37] That four of Sherman's witnesses would be unwilling or unable to travel to Nevada for trial does not tip this factor in Sherman's favor.

---

[32] ECF No. 119-1 at ¶ 4.

[33] ECF No. 123-1 at ¶¶ 4, 10.

[34] ECF No. 119 at 8.

[35] I give no weight to the conclusory statement in Sherman's affidavit—with no facts to support it—that he has "determined that the conduct of a trial in Nevada, as compared with a trial in Ohio, would involve a substantial financial burden." ECF No. 119-1 at ¶ 17.

[36] ECF No. 119 at ¶ 13.

[37] ECF No. 123-1 at ¶ 9.

Notably, as Sonoro points out, none of the witnesses that Sherman now identifies as so essential to warrant a change of venue were identified by Sherman in his initial disclosures, first supplemental initial disclosures, or second supplemental initial disclosures, nor has Sonoro ever named any of these witnesses in its disclosures.[38] Additionally, Sherman has also not shown why any documentary evidence that is located in Ohio would be difficult or costly to transport to Nevada.[39] Thus, I find no issue with ease of access to evidence in Nevada.

### 2. *Interest of justice*

The fact that Sherman waited almost a year after he was served with process in this case, nine months after he answered the amended complaint, and four months after all three motions to dismiss for lack of personal jurisdiction were fully briefed to file the instant motion to transfer weighs strongly against granting the motion. The other three defendants have already expended considerable resources briefing those motions, and Sonoro has spent considerable resources opposing all three. All of these efforts would need to be duplicated if I transferred this case to Ohio. Though discovery is currently stayed depending the outcome of these motions, this case has been pending in this district for more than a year.

Additionally, Nevada has a strong local interest in this controversy involving a Nevada corporation, and this court may be better equipped than an Ohio court to handle questions of Nevada law. Sherman concedes this point.[40] Sonoro has also provided persuasive evidence that the relative court congestion weighs against transfer because this case will be more expeditiously resolved in this district.[41]

---

[38] ECF Nos. 122-1, 122-2, 122-3, 122-4.

[39] *Operation: Heroes, Ltd. v. Procter and Gamble Productions, Inc.*, 903 F. Supp. 2d 1106, 1115 (D. Nev. 2012). Sherman admits that a majority of his documents are "stored in a web-based repository and are accessible from any location," but maintains that certain unspecified evidence "that is not susceptible to transport or electronic formatting is located in Ohio." ECF No. 119 at 16.

[40] ECF No. 119 at 9 (citing *Horwitz v. Southwest Forest Indus.*, 612 F. Supp 179, 183 (D. Nev. 1985)).

[41] ECF No. 120 at 16–17.

Accordingly, I find that Sherman has failed to show that the convenience of the parties and witnesses and the interest of justice would best be served by transferring this case to Ohio. At most, Sherman has shown that transferring this case to Ohio would be more convenient for him and him alone; this is not enough. I therefore deny Sherman's motion to transfer venue, and I turn to Goss, Takkas, and Miller's motions to dismiss.

## II.     Motions to dismiss [ECF Nos. 64, 73, 109]

### A.     Personal jurisdiction

The due-process clause of the Fourteenth Amendment limits a court's power to bind a nonresident defendant to a judgment in the state in which it sits.[42] As the Supreme Court explained in the pathmaking *International Shoe* opinion, "[a]lthough a non-resident's physical presence within the territorial jurisdiction of the court is not required" for the exercise of personal jurisdiction, "the nonresident generally must have 'certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[43] "[T]he defendant's conduct and connection with the forum State [must be enough] that he should reasonably anticipate being haled into court there."[44]

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the forum state are so continuous and systematic" that they are "essentially at home" there.[45] Specific (or case-linked) jurisdiction, on the other hand, depends on an "activity or an occurrence that takes place in [or is purposely directed at] the forum State and is therefore subject to the State's regulation."[46] "In

---

[42] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[43] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[44] *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

[45] *Goodyear Dunlop Tires Oper. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations and quotations omitted).

[46] *Id.*

contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."[47] When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that the court has jurisdiction over the defendant.[48]

### B. This court has specific jurisdiction over Goss, Takkas, and Miller.

Goss, Takkas, and Miller separately move to dismiss for lack of personal jurisdiction. None of these individuals resides in Nevada, and they maintain that their affiliations with Nevada are not so continuous and systematic that they are essentially at home here. They also argue that this court lacks specific jurisdiction over Sonoro's claims against them because their actions as officers and directors of Abakan were not directed at or felt in Nevada, where Abakan is incorporated but conducts no operations.

As the United States Supreme Court recently reiterated in *Walden v. Fiore*, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."[49] Of particular importance here is the Nevada Supreme Court's opinion in *Consipio Holding, BV v. Carlberg* in which it reversed the dismissal of a shareholder-derivative suit against nonresident officers and directors of a Nevada corporation for lack of jurisdiction, holding that a court can exercise specific personal jurisdiction over nonresident officers and directors who directly harm a Nevada corporation.[50] The Court noted that the shareholders were alleging that the officers and directors were "causing direct harm to a Nevada" corporation "for personal gain," and it distinguished the case from *Shaffer v. Heitner*, in which the United States Supreme Court found that

---

[47] *Id.* (internal citations and quotations omitted).

[48] *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

[49] *Walden*, 134 S. Ct. at 1121 (internal citations and quotation marks omitted).

[50] *Consipio Holding, BV v. Carlberg*, 282 P.3d 751, 754 (Nev. 2012). I recognize that some judges in this district have criticized *Consipio* and declined to apply it. *See Andes Industries Inc. v. Chen Sun Lan*, 2014 WL 6611227 (D. Nev. Nov. 19, 2014) (Foley, J) (criticizing *Consipio* as inconsistent with *Shaffer*); *Southport Lane Equity II, LLC v. Downey*, 177 F. Supp. 3d 1286 (2016). But these cases are persuasive only; and *Consipio* remains the law in Nevada.

non-resident officers and directors of a Delaware corporation who opened the company up to liability *outside of* the state were not subject to personal jurisdiction in Delaware.[51] The court reasoned that, "[w]hen officers or directors directly harm a Nevada corporation, they are harming a Nevada citizen. By purposefully directing harm towards a Nevada citizen, [they] establish contacts with Nevada and 'affirmatively direct conduct' toward Nevada."[52] "Further, officers or directors 'cause important consequences' in Nevada when they directly harm a Nevada corporation."[53]

*Consipio* also noted that NRS § 78.135(1), which 'provides notice to [corporate] officers and directors that they are subject to derivative suits for violation of their authority," "provides [them] the understanding that by violating their authority as a Nevada corporation's officer or director, they are subject to an action under Nevada's laws in Nevada" and "supports a district court's authority to exercise personal jurisdiction over officers and directors in such lawsuits."[54] The Court was careful to note, however, that "an individual's position as a Nevada corporation's director does not automatically subject that individual to jurisdiction in Nevada," and the distict court must still conduct "further factual analysis to determine whether the [officers and directors'] conduct subject[s] them to jurisdiction in Nevada," "whether it is reasonable to exercise personal jurisdiction."[55]

The reasonableness inquiry asks "whether it is 'reasonable to require the defendant to defend the particular suit in the jurisdiction where it is brought."[56] "Factors relevant to this inquiry are: (1) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interest of the several states in furthering substantive

---

[51] *Consipio*, 282 P.2d at 756 (citing *Shaffer v. Heitner*, 433 U.S. 186, 189–90 (1977)).

[52] *Id.* (quoting *Trump v. Dist Ct.*, 857 P.2d 740, 748 (Nev. 1993)).

[53] *Id.* (*quoting Jarstad v. National Farmers Union*, 552 P.2d 49, 53 (Nev. 1976)).

[54] *Id.* at 756 (citing NEV. REV. STAT. § 78.135(1)).

[55] *Id.* at 756–57, n.4

[56] *Id.* at 755 (quoting *Trump*, 857 P.2d at 749).

social policies."[57]

I find that defendants' purposeful acts designed to harm Abakan, a Nevada corporation, for their own personal benefit, combined with the notice that NRS § 78.135(1) provides and Nevada's director-consent statute,[58] are sufficient to confer personal jurisdiction over defendants for Sonoro's derivative claims here.  I also find that consideration of these reasonableness factors demonstrates that requiring Goss, Takkas, and Miller to defend Abakan's derivative claims in this jurisdiction "does not offend traditional notions of fair place and substantial justice."[59]  Nevada has an interest in adjudicating the derivative claims of a Nevada corporation to which Nevada law applies, and Sonoro plainly has an interest in obtaining convenient and effective relief and has selected this forum. Accordingly, I deny defendants' motions to dismiss for lack of personal jurisdiction.

### C. Takkas's motion to dismiss under FRCP 12(b)(6).

#### 1. *Motion to dismiss standards*

Rule 8 of the Federal Rules of Civil Procedure requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[60]  While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[61]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[62]  In other words, a complaint must make direct or inferential allegations about

---

[57] *Trump*, 857 P.2d at 749.

[58] NEV. REV. STAT. § 75.160(1).

[59] *Trump*, 857 P.2d at 751.

[60] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[61] *Twombly*, 550 U.S. at 570.

[62] *Iqbal*, 556 U.S. at 678.

"all the material elements necessary to sustain recovery under *some* viable legal theory."[63]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[64] Mere recitals of a claim's elements, supported only by conclusory statements, are insufficient.[65] Second, the court must consider whether the well-pled factual allegations state a plausible claim for relief.[66] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[67] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[68]

### 2. *Sonoro's claims are sufficiently pled against Takkas.*

Takkas argues that Sonoro's claims either fail as a matter of law or fail as pled.[69] Takkas first argues that Sonoro's fiduciary-duty claim fails because Sonoro does not meet Rule 9(b)'s heightened pleading standard. Additionally, most of the complained-of actions and omissions occurred before or after Takkas served as an officer of Abakan when Takkas owed no fiduciary duty to the company.

Takkas is correct that Nevada's business-judgment rule exculpates officers from liability for fiduciary breaches unless an act or failure to act amounts to intentional misconduct, fraud, or a

---

[63] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[64] *Iqbal*, 556 U.S. at 678–79.

[65] *Id*.

[66] *Id.* at 679.

[67] *Id.*

[68] *Twombly*, 550 U.S. at 570.

[69] ECF No. 73 at 9–11.

knowing violation of the law.[70] But he is wrong that Rule 9(b)'s heightened pleading requirement applies to non-fraudulent breach-of-fiduciary-duty claims.[71] Sonoro sufficiently alleges that Takkas engaged in intentional misconduct. For example, it alleges: "As Abakan's business deteriorated, Abakan's directors and officers diverted funds from legitimate and well-advised business applications to themselves and to related third parties."[72] Sonoro also alleges that Takkas breached his fiduciary duties during the 2014 MesoCoat/Powdermet Transaction, the Florida litigation, the New York Litigation, and at least two other transactions. Takkas's attempt to temporally limit his liability is also unavailing. Sonoro need only allege and show that Takkas's alleged breaches proximately caused Abakan's damages,[73] so that some of the alleged harm occurred *after* Takkas was fired does not preclude liability.

Takkas next argues that Sonoro's unjust-enrichment claim fails because there is no allegation that Takkas retained any benefit, unjust or otherwise. Sonoro alleges in its first-amended complaint that Takkas "received certain valuable rights and benefits to which [he] was not entitled" and entered into the UP Transaction and "used the proceeds, to which [he] was not entitled, to disproportionately pay down [his] own related-party debts."[74] Sonoro also alleges that, "[a]s Abakan's business deteriorated, Abakan's directors and officers diverted funds from legitimate and well-advised business applications to themselves and to related third parties."[75] Sonoro sufficiently alleges a claim for unjust enrichment against Takkas.

---

[70] NEV. REV. STAT. § 78.138(7).

[71] *Carstarphen v. Milsner*, 594 F. Supp. 2d 1201 (D. Nev. 2009).

[72] ECF No. 11 at ¶ 30.

[73] *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–81 (9th Cir. 2007) (applying Nevada law and stating that a breach-of-fiduciary-duty claim requires a plaintiff to show the existence of a fiduciary duty, the breach of that duty, and damages proximately caused by the breach).

[74] ECF No. 11 at ¶¶ 83–86.

[75] *Id.* at ¶ 30.

Finally, Takkas argues that Sonoro's gross-mismanagement claim fails as a matter of law because this claim is not recognized under Nevada law. Sonoro responds that the gravamen of this claim is gross negligence for Takkas's management of Abakan's affairs, and Nevada law recognizes gross-negligence claims against corporate officers.[76] Though Sonoro's third claim for relief is titled "gross mismanagement," it is best construed as a claim for gross negligence based on defendants' mismanagement of Abakan. I find that Sonoro adequately pleads a claim for gross negligence.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that defendants' motions to dismiss **[ECF Nos. 64, 73, 109]** and Sherman's motion to transfer **[ECF No. 119] are DENIED.**

Dated this 24th day of January, 2017.

_____
Jennifer A. Dorsey
United States District Judge

---

[76] ECF No. 95 at 24.