JAMES PATRICK SHEA, ESQ.
Nevada Bar No. 405
ARMSTRONG TEASDALE LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone:  702.678.5070
Facsimile:  702.878.9995
Email: jshea@armstrongteasdale.com

DAVID MARDER, ESQ.
Massachusetts Bar No. 552485 (*pro hac vice*)
SHERLI FURST, ESQ.
New York Bar No. 4783577 (*pro hac vice*)
MICHAEL A. KOLCUN, ESQ.
New York Bar No. 5054127 (*pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, New York 10022-4611
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
Email: DMarder@RobinsKaplan.com
          SFurst@RobinsKaplan.com
          MKolcun@RobinsKaplan.com

*Counsel for Plaintiff Sonoro Invest S.A.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SONORO INVEST S.A., a Panamanian corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>ROBERT MILLER, an individual; ANDREW SHERMAN, an individual; COSTAS TAKKAS, an individual; and STEPHEN GOSS, an individual,<br><br>            Defendants,<br><br>     and<br><br> ABAKAN, INC., a Nevada corporation,<br><br>            Nominal Defendant. | Case No. 2:15-cv-2286<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT** |

Pursuant to Fed.R.Civ.P. 23.1(c), Plaintiff Sonoro Invest S.A. ("Sonoro"), by and through its counsel of record, moves unopposed for preliminary approval of the proposed settlement to resolve all of the claims asserted in this action on behalf of Nominal Defendant Abakan, Inc. ("Abakan")

1

against Defendants Robert Miller ("Miller"), Andrew Sherman ("Sherman"), Costas Takkas ("Takkas"), and Stephen Goss ("Goss") (collectively, "Individual Defendants").

The terms of the proposed settlement are enumerated in the Settlement Agreement dated as of August 10, 2017, which is annexed as Exhibit A. The proposed Notice for current Abakan shareholders is annexed as Exhibit B. A proposed order preliminarily approving the settlement and providing for notice is annexed as Exhibit C.

This unopposed motion is made and based on the following Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any argument the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Sonoro is pleased to inform the Court that after extensive arms-length negotiations between experienced and qualified counsel, the parties have agreed to a settlement which fully, finally, and forever resolves the claims asserted in this action while providing substantial benefits to Abakan and its shareholders. In pertinent part, Abakan's insurance carrier has agreed to pay monetary benefits totaling $1,250,000.00 ("Settlement Sum") as a result of the filing, prosecution, and proposed settlement of this action. In accord with Abakan's past practices and as authorized by another federal court, Abakan has assigned to MesoCoat, Inc. ("MesoCoat") – the operating subsidiary, and the shares of which are Abakan's only remaining asset – the benefit of its portion of the Settlement Sum. Sonoro's legal counsel's recommendation that the Court approve the proposed settlement is based on their experience in representative litigation and it is informed by an extensive and rigorous evaluation of the strengths and weaknesses of the claims and defenses, weighed against the risks, uncertainty, expense, and delays that would be entailed in attempting to improve this result through continued litigation, including the risks associated with the limited insurance of Abakan and Individual Defendants that has already been depleted by the ongoing cost of defending this action.

The proposed settlement also recognizes the substantial benefit of this monetary recovery by providing Sonoro's legal counsel with reimbursement of reasonable attorneys' fees and costs it expended in prosecuting this action, in the total amount of $350,000.00 for fees and $52,121.69 for costs, which is to be deducted from the Settlement Sum and is subject to Court approval.

Importantly, the parties only agreed to the requested appropriation of attorneys' fees and costs after negotiating and reaching the substantive terms of the proposed settlement.

The proposed settlement constitutes an appropriate and just resolution of this complex derivative litigation and it is within the range of possible approval as fair, reasonable, and adequate, thereby satisfying the test that courts employ in reviewing a settlement for preliminary approval. Accordingly, Sonoro respectfully requests that the Court enter the annexed proposed order to (i) preliminarily approve the proposed settlement set forth in the annexed Settlement Agreement; (ii) approve the annexed proposed Notice and direct its publication; and (iii) schedule a hearing to entertain any objections by current Abakan shareholders and to consider final approval of the proposed settlement.

Individual Defendants do not oppose this motion or any of the requested relief.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Factual Background

On December 3, 2015, Sonoro initiated this action by filing its Verified Shareholder Derivative Complaint. ECF No. 1. On December 29, 2015, Sonoro filed its operative First Amended Verified Shareholder Derivative Complaint. ECF No. 11. By way of background, and as alleged, Abakan conducts a metal-cladding technology business entirely through its operating subsidiary MesoCoat. *Id*.

Sonoro is a shareholder of Abakan, and brought this action on the company's behalf, alleging breaches of fiduciary duties, unjust enrichment, and gross negligence by Individual Defendants, who are current and/or former officers and/or directors of Abakan. *Id*. In principal part, Sonoro alleges that Individual Defendants (i) caused Abakan to pay inflated prices for its acquisition of ownership in MesoCoat; (ii) mismanaged, neglected, and wasted company assets causing Abakan to default on debts; (iii) failed to make timely filings with the U.S. Securities and Exchange Commission; (iv) caused Abakan to be found in contempt of the U.S. District Court for the Southern District of New York on two separate occasions which resulted in the appointment of a receiver over Abakan and MesoCoat; (v) used their positions of control to authorize an agreement for the benefit of company insiders and to Abakan's detriment; (vi) disproportionately used loan proceeds to pay down related-

party debt; (vii) entered into abnormal debt agreements outside the ordinary course of business that were not disclosed to the U.S. Securities and Exchange Commission, and which Abakan later defaulted on; (viii) improperly engaged in dilatory litigation tactics in the U.S. Bankruptcy Court for the Southern District of Florida, thereby needlessly wasting Abakan's resources; (ix) refused to hold required annual stockholder meetings, and (x) opened a bank account for the purpose of fraudulently transferring Abakan's assets to themselves and another company insider. *Id*.

### B.  Additional Relevant Facts as a Result of Other Litigation against Abakan

Shortly after the commencement of this action, the U.S. District Court for the Southern District of New York entered an order in the New York Litigation (as defined in the Amended Complaint) authorizing Abakan's receiver to consummate a Satisfaction and Assignment Agreement on Abakan's behalf which, among other things, approved Abakan's assignment to MesoCoat of its right to receive certain cash installment payments owed by an affiliated entity. *See* Order, *George Town Associates S.A. v. Abakan, Inc., et al.*, 15-cv-3435 (S.D.N.Y. Dec. 18, 2015) (Dkt. 269) (Cote, J.).  As a result, and among other reasons, Abakan's only remaining asset is its ownership of shares in MesoCoat. *See* Exhibit A (Settlement Agmt. § 4.4).

Thereafter, on April 12, 2016, the U.S. District Court for the Southern District of New York entered an order in the New York Litigation terminating the receivership over Abakan, thereby reverting control of the company to Miller and Goss. *See* Endorsed Letter, *George Town Associates S.A. v. Abakan, Inc., et al.*, 15-cv-3435 (S.D.N.Y. April 12, 2016) (Dkt. 276) (Cote, J.).

### C.  The Parties Engage in Extensive Motion Practice

This litigation has been complex and vigorously litigated since inception.  At the earliest stage of this case, Sonoro was required to expend time and resources moving for approval to serve Miller with the summons and Amended Complaint by publication after its numerous attempts to accomplish personal service proved unsuccessful.  ECF No. 42.  Sonoro was also required to move for an extension of time to serve Takkas in accordance with the procedures of the Hague Convention as a result of his then-present detainment in Switzerland, and undertook efforts to do so.  ECF No. 46.

After effectuating service, Sherman answered the Amended Complaint asserting numerous defenses.  ECF Nos. 33, 35, and 78.  For his part, and on April 18, 2016, Goss moved for dismissal

challenging this Court's personal jurisdiction under Fed.R.Civ.P. 12(b)(2).  ECF No. 64.  On May 5, 2016, Takkas moved for dismissal on the same grounds, in addition to requesting dismissal pursuant to Fed.R.Civ.P. 12(b)(6).  ECF No. 73.  On July 6, 2016, Miller joined both motions.  ECF No. 109.  Sonoro was required to expend considerable time and efforts opposing these complex and well-briefed motions which were potentially dispositive on this entire matter.  ECF Nos. 74, 95, and 111.

While the motions to dismiss were pending, Sonoro and Sherman were engaged in discovery, having reached a proposal for a discovery plan and scheduling order following their Fed.R.Civ.P. 26(f) conference, they agreed on a discovery stipulation, and Sherman began to produce documents pursuant to Sonoro's discovery requests.  ECF Nos. 47, 48, 50, and 53.  On May 4, 2016, however, Goss filed an emergency motion to stay discovery in light of his then-pending dispositive motion, which Takkas later joined.  ECF Nos. 70 and 75.  Sonoro opposed these applications.  ECF Nos. 79 and 98.  Around the same time, Sherman filed a motion for a protective order in connection with an unrelated discovery dispute with Sonoro.  ECF No. 85.  Separately, Sonoro and Sherman later stipulated to a protective order to govern the disclosure of confidential information in this matter.  ECF No. 87.  On May 31, 2016, the Court entered an order staying discovery as to all Individual Defendants until the three dispositive motions were decided.  ECF No. 102.

On November 7, 2016, and while the other Individual Defendants' motions to dismiss were still pending, Sherman filed a motion to transfer venue of this action to the U.S. District Court for the Northern District of Ohio.  ECF No. 119.  As before, Sonoro was required to expend considerable time and efforts opposing this application.  ECF No. 120.

On January 24, 2017, the Court entered an order denying the motions to dismiss of Goss, Takkas, and Miller, and denying Sherman's motion to transfer venue.  ECF No. 129.  Thereafter, Goss, Takkas, and Miller answered the Amended Complaint and asserted a variety of defenses.  ECF Nos. 131, 133, and 134.

### D.  The Parties Undertake Substantial Discovery

On February 7, 2017, the parties submitted a proposed discovery plan and scheduling order following their Fed.R.Civ.P. 26(f) conference.  ECF No. 130.  Special scheduling review was requested to set extended discovery deadlines given the complex nature of this case and the numerous

and geographically diverse parties and witnesses, in addition to the fact that Takkas was confined to his home pending the outcome of a criminal case. *Id*. On February 8, 2017, an order was entered approving the parties' proposed discovery plan and scheduling order and setting a discovery deadline of October 2, 2017. ECF No. 135. Goss, Takkas, and Miller also agreed to join the discovery stipulation and protective order between Sonoro and Sherman. ECF No. 139.

The parties engaged in a substantial amount of discovery – both among each other and with over a dozen nonparties. The parties exchanged initial disclosures, and both Sonoro and Sherman served multiple supplements thereto. Sonoro served six sets of document requests on Individual Defendants, and reached an agreement with Miller, Goss, and Takkas to employ search terms to facilitate the collection and production of responsive documents. Sonoro and Sherman also engaged in extensive negotiations to develop search terms. To date, the parties and various nonparties exchanged approximately 285,000 pages of documents, not including approximately 330 gigabytes of additional data. Sonoro also estimates that a substantial amount of material has yet to be produced.

Sonoro was also required to retain an expert witness to opine on certain of the claims and defenses at issue in this case. To date, Sonoro's expert has reviewed a considerable amount of the information exchanged in discovery, in addition to other materials, and was in the process of formulating an opinion.

As a result of the substantial amount of discovery required to prosecute and defend this action, and considering the then-current deadline for expert disclosures, the Court recently granted Sonoro's unopposed motion for a four (4) month extension of the already specially-set discovery deadlines. ECF No. 145.

### III.   THE PROPOSED SETTLEMENT

In the midst of proceeding through this complex and extensive discovery stage, and following months of ongoing arms-length negotiations between qualified and experienced counsel, the parties entered into a binding term sheet for settlement setting forth the principal grounds for resolving this action. In accordance with its terms, the parties submitted a stipulation for a thirty (30) day stay of this action in order to draft and exchange a longer-form settlement agreement, which the Court granted. ECF No. 147. The parties have now reached a final agreement to resolve this action

pursuant to the terms of the Settlement Agreement which is submitted herewith. *See* Exhibit A.

Pursuant to the Settlement Agreement, Abakan's insurance carrier, on behalf of Individual Defendants, and on final Court approval and within fifteen (15) business days of receiving payment instructions, shall pay the Settlement Sum ($1.25 million) to Sonoro's legal counsel for distribution in order to fully and finally settle this action. *Id*. § 2.1. In accordance with Abakan's assignment as set forth in the Settlement Agreement, Sonoro's legal counsel shall distribute Abakan's portion of the Settlement Sum to MesoCoat. *Id*. §§ 2.1 and 3. The remaining portion of the Settlement Sum shall be paid to Sonoro's legal counsel for reimbursement of the reasonable attorneys' fees and costs expended in the prosecution of this action. *Id*. § 2.1.

The parties and their counsel acknowledge and agree that the proposed settlement of this action confers substantial benefits on Abakan and its shareholders considering that (i) Abakan's only remaining asset is its ownership of shares of MesoCoat; (ii) Abakan recently assigned to MesoCoat all of its rights to receive certain cash installment payments, which was authorized by the U.S. District Court for the Southern District of New York; and (iii) termination of the receivership over Abakan resulted in Miller and Goss regaining sole control over the company. *Id*. (Settlement Agmt. § 1; incorporating Recitals 1, 2, and 12); Endorsed Letter, *George Town Associates S.A. v. Abakan, Inc., et al.*, 15-cv-3435 (S.D.N.Y. April 12, 2016) (Dkt. 276) (Cote, J.).

Sonoro respectfully submits that the proposed settlement is an excellent result in light of the overall circumstances and posture of this litigation.

IV. **ARGUMENT**

There is strong policy favoring compromises which resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, at 7 (N.D. Cal. Dec. 19, 2008) (Armstrong, J.) (preliminarily approving shareholder derivative settlement; quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). "Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable." *HPEV, Inc. v. Spirit Bear Ltd.*, 13-cv-1548, 2016 U.S. Dist. LEXIS 58599, at 6 (D. Nev. May 2, 2016) (Dorsey, J.) (approving in final shareholder derivative

7

settlement; internal notations omitted). In light of these considerations, and as demonstrated below, the proposed settlement warrants preliminary approval and notice of its terms should be disseminated in advance of a hearing for final approval.

### A. Legal Standard for Preliminary Approval

Fed.R.Civ.P. 23.1 governs the analysis of the fairness of a settlement of a shareholder derivative action. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) (affirming final approval of shareholder derivative settlement). The rule provides that a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed.R.Civ.P. 23.1(c).

In evaluating a settlement, a district court must determine whether it is "fundamentally fair, reasonable, and adequate." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (affirming final approval of settlement). A court should also ensure that a settlement "is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (affirming final approval of settlement). The Ninth Circuit has also provided certain nonexclusive factors for district courts to balance when evaluating the fairness of a settlement, including the following:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; ... the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction ... to the proposed settlement.

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.

A district court must exercise "sound discretion" when approving a settlement. *Id*. In doing so, a court should take into account that parties to the settlement of a shareholder derivative action are permitted great freedom in shaping the form of the consideration. *See HPEV*, 2016 U.S. Dist. LEXIS 58599, at 6-7 (quoting *Levin v. Mississippi River Corp.*, 59 F.R.D. 353, 367 n.38 (S.D.N.Y. 1973), *aff'd sub nom.*, *Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied*, 414 U.S. 1112 (1973)). The Ninth Circuit defines the limits of this inquiry as follows:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The

> proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (emphasis in original).

### B. The Proposed Settlement Should Be Preliminarily Approved

At the settlement hearing, the Court will have a detailed submission in support of the proposed settlement and will be asked to make a final determination that it is fair, reasonable, and adequate and in the best interest of Abakan and its shareholders. While the parties believe that the proposed settlement merits final approval, the Court is only requested to grant preliminary approval at this time. To do so, the Court need only make a preliminary fairness evaluation and direct that notice be given of a formal fairness hearing when arguments and evidence may be presented in regard to the settlement. *See In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, at 8-9; Manual for Complex Litigation § 21.632 (4th ed. 2004).

Sonoro respectfully submits that the Court should find that the proposed settlement is within the range of possible approval. As a threshold matter, the proposed settlement was reached after extensive arms-length negotiations between experienced and qualified counsel. It provides substantial benefits to Abakan and its shareholders while eliminating the risk, considerable expense, and delay inherent in complex derivative litigation, including the real risk that there would be no recovery. As the U.S. District Court for the Southern District of New York recently recognized in the New York Litigation, Abakan's assignment of its portion of the Settlement Sum comports with the company's historical practices and provides benefits to its shareholders, considering the shares of MesoCoat are Abakan's only remaining asset and MesoCoat is operated and managed independent of Individual Defendants.

Examination of the pertinent factors considered by district courts in granting final approval of derivative and class action settlements also militates in favor of preliminary approval, as well as final approval on notice to current Abakan shareholders. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458. As an initial matter, the "evaluation of the benefits of settlement must also be tempered by a recognition that any compromise involves concessions on the part of all the settling parties." *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, at 11. As the Ninth Circuit

reasons, the "very essence of settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (notations omitted).  Although Sonoro and its counsel believe the asserted claims are meritorious – and even though Sonoro's pleading survived initial, dispositive challenges – Individual Defendants' liability is not a foregone conclusion.  Should litigation continue, there is a risk that Sonoro would be unsuccessful on summary judgment or at trial based on, among other things, a number of the defenses Individual Defendants asserted such as their collective claim of exculpation via the business judgment rule.  Even if liability is eventually established, the measure of damages from Individual Defendants, recoverability aside, would pose significant issues and engender additional litigation.  Assuming Sonoro is victorious on all of these fronts, there is still no guarantee that judgment would be ultimately sustained on appeal.

Of course, continued litigation would also be exceptionally costly and of substantial duration. As described above, there remains a substantial amount of document discovery to be completed, as well as dozens of depositions of parties and nonparties across the country, not to mention disclosure from multiple expert and rebuttal witnesses.  Recognizing this reality, the Court has already extended the discovery deadlines beyond the substantial duration it endorsed when the parties first requested special scheduling review.  ECF Nos. 135 and 145.  The proposed settlement eliminates these risks, expenses, and delays, and the parties and their counsel submit that the proposed settlement of this action confers substantial benefits on Abakan and its shareholders.  Moreover, the extensive negotiations of the proposed settlement between such experienced counsel, with full understanding of the relative strengths and weaknesses of the asserted claims and defenses, refutes any notion of fraud or collusion.  *See In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, at 9.

Finally, the proposal for reimbursement of Sonoro's attorneys' fees and costs is reasonable. In recognition of the substantial benefit of the monetary recovery, the proposed settlement provides Sonoro's legal counsel with the total amount of $350,000 for attorneys' fees and $52,121.69 for costs, subject to the Court's approval.  The parties only negotiated and agreed to apportion this award after reaching the principal terms of the proposed settlement, resulting in an attorneys' fees and costs provision that is consistent with the benefits conferred on Abakan and its shareholders.  The United States Supreme Court endorses the consensual resolution of these issues.  *See Hensley v. Eckerhart*,

461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee.").

Therefore, the Court should preliminarily approve the proposed settlement.

### C. The Proposed Notice Should Be Approved and Disseminated

Sonoro also seeks approval of the form and manner of the proposed Notice, which is annexed as Exhibit B. The proposed Notice provides the requisite information concerning the terms of the proposed settlement, the protocol for current Abakan shareholders to comment, and the date of the hearing for final approval. *Id*. Accordingly, the form of the proposed Notice should be approved.

As to the manner of the notice, Fed.R.Civ.P. 23.1(c) affords a district court substantial discretion in crafting the means of notice "in the manner that the court orders." "In general, notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Lloyd v. Gupta*, 15-cv-4183, 2016 U.S. Dist. LEXIS 96166, at 19-20 (N.D. Cal. July 22, 2016) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Here, the best practical means of notifying current Abakan shareholders of the proposed settlement is by furnishing the proposed Notice directly via first-class mail, the cost of which Abakan's insurance carrier has agreed to bear. *See, e.g. HPEV*, 2016 U.S. Dist. LEXIS 58599, at 3 (approving in final shareholder derivative settlement after notice mailed to shareholders of record); *Sullivan v. Dolgen Cal., LLC*, 15-cv-1617, 2016 U.S. Dist. LEXIS 157269, at 11 (N.D. Cal. Nov. 14, 2016) (preliminarily approving settlement upon direct notice by mail); *Lloyd*, 2016 U.S. Dist. LEXIS 96166, at 20 (preliminarily approving settlement upon notice to shareholders via first-class mail). Accordingly, the form and manner of the proposed Notice constitutes the best practicable means of notifying current Abakan shareholders of the proposed settlement by satisfying both Fed.R.Civ.P. 23.1 and due process.

Therefore, the Court should approve the form and manner of the proposed Notice and direct its dissemination to current Abakan shareholders.

//

//

//

## V. PROPOSED SCHEDULE OF EVENTS

Sonoro respectfully proposes the following schedule for the consideration and final approval of the proposed settlement:

| Event | Deadline |
|---|---|
| Dissemination of the proposed Notice by first-class mail to current Abakan shareholders | Ten (10) days following the Court's entry of an order preliminarily approving the proposed settlement |
| Motion for final approval of the proposed settlement | Thirty (30) days prior to the settlement hearing |
| Filing an objection to the proposed settlement by a current shareholder of Abakan | Fourteen (14) days prior to the settlement hearing |
| Filing a response to an objection to the proposed settlement by a current shareholder of Abakan | Seven (7) days prior to the settlement hearing |
| Settlement hearing | Fifty-five (55) days following the Court's entry of an order preliminarily approving the proposed settlement, or at the Court's convenience |

## VI. CONCLUSION

For the reasons set forth above, Sonoro respectfully requests that the Court grant this unopposed motion and enter the annexed proposed order which (i) preliminarily approves the proposed settlement; (ii) approves the form and manner of the proposed Notice; and (iii) schedules a hearing for final approval of the proposed settlement.

Respectfully submitted,

Dated: August 21, 2017

By: */s/ James Patrick Shea*
James Patrick Shea, Esq.
Armstrong Teasdale LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Main: (702) 678-5070
Direct: (702) 473-7079
JShea@ArmstrongTeasdale.com

David Marder, Esq. (*pro hac vice*)
Sherli Furst, Esq. (*pro hac vice*)
Michael A. Kolcun, Esq. (*pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, New York 10022-4611
Telephone: (212) 980-7400
DMarder@RobinsKaplan.com
SFurst@RobinsKaplan.com
MKolcun@RobinsKaplan.com

*Counsel for Plaintiff Sonoro Invest S.A.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties of record via ECF on this 21st day of August, 2017.

By: */s/ Jessica Myrold*
Jessica Myrold